CANYON AREA RESIDENTS FOR THE ENVIRONMENT, a Colorado non-profit corporation, Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY, State of Colorado; Public Interest Communications, LLC; and Bear Creek Development Corporation, Defendants–Appellees.

No. 04CA0810.

Colorado Court of Appeals, Div. II.

May 4, 2006.

As Modified on Denial of Rehearing Nov. 9, 2006.

⚷572

Hale Friesen, LLP, Richard A. Westfall, Jason R. Dunn, Denver, Colorado, for Plaintiff–Appellant.

Timothy P. Cox, Acting County Attorney, Patricia W. Gilbert, Assistant County Attorney, Golden, Colorado, for Defendant–Appellee Board of County Commissioners of Jefferson County, State of Colorado.

Otten, Johnson, Robinson, Neff, & Ragonetti, Brad W. Schacht, Jennifer L. Warnken, Denver, Colorado, for Defendant–Appellee Public Interest Communications, LLC.

Brownstein, Hyatt, & Farber, P.C., Andrew W. Loewi, Richard P. Barkley, Christopher C. Zenisek, Denver, Colorado, for Defendant–Appellee Bear Creek Development Corporation.

ROTHENBERG, J.

In this C.R.C.P. 106(a)(4) action, Canyon Area Residents for the Environment (CARE) appeals the district court's judgment affirming the decision of the Board of County Commissioners of Jefferson County (Board), to approve an application to rezone land and permit construction of a telecommunications tower. We reverse and remand for further proceedings.

Bear Creek Development Corporation and Public Interest Communications, LLC (Applicants) applied to rezone a section of land on Mount Morrison located above Red Rocks Amphitheater to replace an existing telecom-

munications tower with a new tower. The application contained two alternative tower designs and a maintenance building design.

The Applicants appeared before the Jefferson County Staff Planning Commission (Commission), which held several public hearings on the application. The hearings were attended by many citizens and interested parties, most of whom opposed the zoning change. Based on the evidence and testimony presented, the Commission denied the application, concluding the proposal was not in conformance with the Central Mountain Community Plan (CMCP) or the Telecommunications Land Use Plan (TLUP).

The Applicants appealed the Commission's decision to the Board, which also held several meetings and heard testimony regarding alternative tower sites, radiation levels, design of the replacement tower, and compliance with the CMCP and TLUP. During the third meeting, the Board closed public testimony. After the meeting, multiple changes were made to the application, and the Board approved the revised rezoning application.

CARE then filed this action seeking judicial review under C.R.C.P. 106(a)(4). The district court affirmed the Board's decision.

## I.

CARE contends the Board abused its discretion by permitting the Applicants to make substantial changes to their proposal after public testimony was closed. We agree.

## A.

As an initial matter, we address the standard of review to be applied by appellate courts reviewing a C.R.C.P. 106(a)(4) proceeding.

■ C.R.C.P. 106(a)(4) provides for judicial review of a decision of any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions for the purpose of determining whether the body or officer exceeded its jurisdiction or abused its discretion. The rule contemplates that the district court will review the record of the proceedings to make this determination. *Widder v. Durango Sch. Dist. No. 9-R,*

85 P.3d 518 (Colo.2004). The district court exercises no factfinding authority in such cases, and we engage in the same type of record review as did the district court. *Feldewerth v. Joint Sch. Dist. 28-J,* 3 P.3d 467, 470 (Colo.App.1999).

■ Thus, our review here is limited to whether the governmental body abused its discretion or exceeded its jurisdiction in granting the application to rezone the land on Mount Morrison. *See Widder v. Durango Sch. Dist. No. 9-R, supra.*

■ An abuse of discretion occurs when a governmental body issues a decision that is not reasonably supported by any competent evidence in the record. *Van Sickle v. Boyes,* 797 P.2d 1267 (Colo.1990); *Carney v. Civil Serv. Comm'n,* 30 P.3d 861 (Colo.App.2001). "No competent evidence" means that the governmental body's decision is "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Bd. of County Comm'rs v. O'Dell,* 920 P.2d 48, 50 (Colo.1996)(quoting *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1309 (Colo.1986)).

■ Furthermore, "[i]n a C.R.C.P. 106(a)(4) proceeding, the reviewing court may consider, in determining the existence of an abuse of discretion, whether the hearing officer misconstrued or misapplied the applicable law." *Van Sickle v. Boyes,* 797 P.2d 1267, 1274 (Colo.1990)(citing *Elec. Power Research Inst., Inc. v. City & County of Denver,* 737 P.2d 822, 825–26 (Colo.1987)).

## B.

■ When, as here, an agency acts in a quasi-judicial capacity, procedural due process requires that the agency give notice and afford an opportunity for a meaningful hearing to affected individuals. *Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220 (Colo. 2005); *Douglas County Bd. of Comm'rs v. Pub. Utils. Comm'n,* 829 P.2d 1303 (Colo. 1992); *Van Sickle v. Boyes, supra.*

When a Planned Unit Development (PUD) resolution is involved, the General Assembly has required that notice of a hearing shall be provided to the general public, § 24–67–

104(1)(e), C.R.S.2005, and that all interested parties who are present at the public hearing and wish to testify shall be heard. Section 24–67–105.5(3), C.R.S.2005.

■ Although administrative proceedings need not strictly comply with the rules of procedure and evidence, *Monte Vista Prof'l Bldg., Inc. v. City of Monte Vista*, 35 Colo.App. 235, 531 P.2d 400 (1975), the principle of fundamental fairness must be observed in zoning proceedings. *Nat'l Heritage, Inc. v. Pritza*, 728 P.2d 737 (Colo.App. 1986); *Monte Vista Prof'l Bldg., Inc. v. City of Monte Vista, supra.* "[T]he hearing process must be conducted in an atmosphere evidencing fairness in the adjudication of matters before [a board]." *Sclavenitis v. City of Cherry Hills Vill. Bd. of Adjustment & Appeals*, 751 P.2d 661, 663 (Colo.App. 1988).

County zoning resolution § 1.G.3.1 provides:

> The Planning and Zoning Department shall prepare comments and present pertinent facts and recommendations to the Planning Commission and the Board of County Commissioners. *To ensure completeness and to allow adequate public review, no substantial revisions or additions, except in response to an agency or staff request or those specifically requested by the Planning Commission or the Board of County Commissioners may be made to any application or supporting documents within 21 days prior to any hearing.*

(Emphasis added.)

■ As we read this zoning resolution, it only permits an applicant to make substantial changes in an application if (1) the changes are made in response to and at the specific request of the agency or staff; and (2) the changes are made within twenty-one days *prior to* the public hearing. This resolution does not affect minor changes, which may be made at any time.

Contrary to the Applicants' contention, this twenty-one-day exception in the zoning rule does not authorize substantial changes to the zoning application in response to the Board's request *after* the public hearings have closed. The reason is obvious. The Applicants' con-

struction of the zoning rule, if adopted, would allow an applicant to make wholesale changes to its application without providing adequate notice to the public and a reasonable opportunity to respond to those changes. *See Bd. of County Comm'rs v. Conder*, 927 P.2d 1339, 1353 (Colo.1996)(Kourlis, J., dissenting)(quoting *Holly Dev., Inc. v. Bd. of County Comm'rs*, 140 Colo. 95, 105, 342 P.2d 1032, 1038 (1959): "[O]verall plans or changes should be given such publicity as will reasonably inform those owners affected, as well as the public, of what is proposed.").

■ We have found no Colorado appellate opinions specifically addressing when modifications to a zoning application constitute a "substantial change" to the application. However, the Connecticut Supreme Court has held improper a zoning board's consideration of new evidence or facts after the close of public testimony, because it does not permit adequate public review, and has concluded that the proper remedy is a remand for an additional hearing to allow such public review. *See Pizzola v. Planning & Zoning Comm'n*, 167 Conn. 202, 355 A.2d 21 (1974); *Parish of St. Andrew's Protestant Episcopal Church v. Zoning Bd. of Appeals*, 155 Conn. 350, 232 A.2d 916 (1967).

We agree with the reasoning of that court.

Here, the Board conducted several hearings concerning the Applicants' application to rezone land on Mount Morrison, and it heard public testimony during the first and second hearings, and part of the third. However, substantial revisions and additions were made to the application *after* the public testimony was closed. On appeal, CARE has asserted that at least ten substantial changes were made, including the Applicants' disclosure regarding: (1) the number of antennas, (2) the overall dimensions of the tower, (3) the maximum antenna width, (4) the location of ground-mounted antennas, (5) the maximum width of the tower legs, and (6) the fact that antenna stacking would be allowed.

Also, during the public testimony, many concerns were raised that the tower would be unsightly, would mar the beauty of the adjacent landscape near Red Rocks Amphitheater, and would obstruct what many view as

the "Gateway to the Rockies" on Interstate 70. The Applicants responded, asserting that they would consider building a rock facade around the base of the tower to camouflage it and make the new buildings less visible. After the public testimony closed, however, the Applicants decided they would paint the tower instead. And, after the public testimony closed, the Applicants more than doubled the antenna face area and expressed their intent to deposit the excavated dirt and rock from the 14,000 square foot building in a visible location on top of Mount Morrison.

We agree with CARE that the alleged revisions by the Applicants were substantial enough to warrant adequate public review, and that the public was not reasonably informed of the project specifications, as required by zoning resolution § 1.G.3.1 and § 31–23–304, C.R.S.2005. We therefore conclude the Board abused its discretion by permitting the Applicants to change their proposal after the public testimony was closed without giving the public an adequate opportunity to be heard. *See Bd. of County Comm'rs v. Conder, supra; Pizzola v. Planning & Zoning Comm'n, supra; Parish of St. Andrew's Protestant Episcopal Church v. Zoning Bd. of Appeals, supra; cf. Colo. Leisure Prods., Inc. v. Johnson,* 187 Colo. 443, 532 P.2d 742 (1975)(court concluded a zoning resolution was void because the applicant requested the rezoning of 80 acres and the board of county commissioners' resolution rezoned 160 acres).

Accordingly, we conclude the case must be remanded to the district court with directions to remand to the Board.

## II.

■ CARE next contends the Board abused its discretion by failing to make an express finding that no existing tower sites were adequate. We agree.

■ Generally, express factual findings are not a prerequisite to a valid decision by an administrative board if the necessary findings may be implied from the action taken. *Sundance Hills Homeowners Ass'n v. Bd. of*

*County Comm'rs,* 188 Colo. 321, 534 P.2d 1212 (1975).

Zoning resolution § 15.F.2.b(1) places the burden on an applicant who seeks a zoning change to make the following showing:

*The applicant must provide expert testimony that demonstrates to the satisfaction of the Board of County Commissioners that no existing telecommunications site is available to accommodate the equipment or purpose for which the tower or increase in height is proposed at a reasonable cost or other business terms.*

(Emphasis added.)

The parties agree the Board did not specifically find that no existing tower sites were adequate to accommodate Applicants' proposal, and contrary to the Applicants' contention, we conclude the evidence did not compel such a conclusion or permit us to infer such a finding from the evidence.

The most significant and hotly contested issue at the hearings was whether there was an adequate location for the proposed tower other than Mount Morrison. An expert for the county testified that Squaw Mountain was an adequate location for the proposed tower. The county's planning staff agreed, as did the owners of Squaw Mountain. The Applicants' expert testified that a tower on Squaw Mountain would have a weaker signal, would not provide adequate coverage in areas of the front range blocked from the "line of site" [sic] of the tower, and would cause radio frequency interference with existing towers. But he also testified that Eldorado, Lookout, and Chief Mountains would provide adequate coverage. Evidence was also submitted about the changes in technology that might obviate the need for such construction.

Of the three Board members, two voted to grant the application and one member voted to deny it, and the record indicates that at least one member of the Board applied an incorrect legal standard in resolving this issue. At the hearing, this member stated, "[T]he decision we make today has to do with *whether this is a good site[,] not whether there is a better site somewhere else*" (emphasis added). However, this statement is inconsistent with the applicable standard,

which requires the Applicants to prove that "no existing telecommunications site is available to accommodate the equipment or purpose for which the tower ... is proposed." Zoning resolution § 15.F.2.b(1).

On remand, the Board shall make the express determination required by zoning resolution § 15.F.2.b and determine whether the Applicants have met their burden of proving no existing tower sites are adequate to accommodate their proposal.

### III.

■ CARE also contends the Board erred in approving the application without properly considering the requirements of § 24–67–104, C.R.S.2005. Again, we agree.

### A.

■ Initially, we reject the Applicants' contention that the issue is not properly before us.

In the district court, CARE cited the statute and asserted that it must prevail insofar as the zoning regulations conflicted with the statute. Thus, we conclude CARE sufficiently raised the issue of whether the Board erroneously applied the zoning regulations in this case in contravention of the statute.

In addition, the issue raised by CARE involves a matter of law and will arise on remand. Accordingly, we address it here.

### B.

We review the construction of statutes de novo, and in doing so, we accord deference to the agency's interpretation of its statute. *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323 (Colo.2004). However, when the agency interpretation is not uniform or consistent, we do not extend deference and look to other statutory construction aids. *Lobato v. Indus. Claim Appeals Office, supra.*

If possible, courts must harmonize potentially conflicting statutory provisions. *Denver Publ'g Co. v. Bd. of County Comm'rs,* 121 P.3d 190 (Colo.2005). Where potentially conflicting statutes may be harmonized by one construction, but would be antagonistic under a different construction, we adopt that con-

struction which avoids the potential conflict. *Normandin v. People,* 91 P.3d 383 (Colo. 2004); *Mooney v. Kuiper,* 194 Colo. 477, 573 P.2d 538 (1978).

Section 24–67–104 of the Planned Unit Development Act requires that before a county or municipality may approve a PUD, it must find the PUD is in general conformity with any master plan or comprehensive plan for the county or municipality. The statute provides, as relevant here:

(1) Any county with respect to territory within the unincorporated portion of the county or any municipality with respect to territory within its corporate limits may authorize planned unit developments by enacting a resolution or ordinance which

. . .

(e) Sets forth the procedures pertaining to the application for, hearing on, and tentative and final approval of a planned unit development which shall afford procedural due process to interested parties . . . .

(f) *Requires a finding by the county or municipality that such plan is in general conformity with any master plan or comprehensive plan for the county or municipality.*

Section 24–67–104 (emphasis added).

Jefferson County zoning resolution § 15.-F.2.a(1) provides:

In reviewing a proposal under this Section, the Planning Commission and the Board of County Commissioners *shall consider the compatibility of the proposal with existing and allowed land uses in the surrounding area;* the County's Comprehensive Plan including but not limited to the applicable community plan or, the General Land Use Plan and the Telecommunications Land Use Plan, according to the priorities set forth in the plans; the Local Government Land Use Control Enabling Act; the provisions of section 30–28–115, C.R.S., and any other applicable law, adopted public policies or plans, or studies presented as part of the zoning case. *The Board has the sole discretion to determine what weight, if any, to give each of these factors.*

(Emphasis added.)

In response to CARE's opening brief in the district court, the Applicants asserted:

Zoning Resolution [§ 15.F.2.a(1) ] requires that the Board "consider" the compatibility of the proposal with the Plans and surrounding land uses—it does not require, as Plaintiffs argue, that the proposal be denied if it is incompatible with such Plans or surrounding land uses. On the contrary, *§ 15.F.2.a(1) specifically states that the Board has discretion to determine what weight, "if any," to give to land use plans and policies in making its decision.* (Emphasis added.)

On appeal, the Applicants continue to press their argument that zoning resolution § 15.F.2.a(1) only requires that the Board "consider" compatibility with land use plans. The Applicants also rely on *Theobald v. Board of County Commissioners*, 644 P.2d 942 (Colo.1982), for the proposition that master plans are merely advisory. Alternatively, the Applicants contend the application was in general conformity with land use plans. We are not persuaded.

In *Board of County Commissioners v. Conder, supra,* the supreme court clarified that master plans are advisory *unless* the General Assembly enacts a statute that requires landowners to comply with master plan provisions in pursuing land use development proposals. The PUD Act is such a statute, and pursuant to § 24–67–104(1)(f), master plans are not advisory in the PUD context.

We also reject the Applicants' argument that the Board need only "consider" compliance with master plans. We read zoning resolution § 15.F.2.a(1) as entitling the Board to deference in evaluating whether there has been conformity and compliance with the county's master or comprehensive plans. But § 24–67–104(1)(f) expressly provides that the Board's discretion is subject to a finding that the PUD is in general conformity with any master plan or comprehensive plan.

Because we are remanding for further proceedings and because the Board apparently read the zoning regulation without considering the requirements of § 24–67–104, we conclude reconsideration is required on this issue as well. On remand, the Board shall consider the application's conformity with pertinent land use plans and make specific findings whether the PUD here is in general conformity with any master plan or comprehensive plan.

In view of our conclusions, we need not address CARE's remaining contentions.

The judgment is reversed, and the case is remanded to the district court with directions to remand to the Board for further proceedings consistent with the views expressed in this opinion.

Judge DAILEY and Judge LOEB concur.