COLORADO COURT OF APPEALS 2016COA108

Court of Appeals No. 15CA0239
Arapahoe County District Court No. 13CV722
Honorable Frederick T. Martinez, Judge

_____

Rangeview, LLC, a Colorado limited liability company; Pamela Eades; and John Sellery,

Plaintiffs-Appellants,

v.

City of Aurora, a municipal corporation; City Council of the City of Aurora, a governing body; and Mitrah Investment and Holdings, LLC, a Colorado limited liability company.

Defendants-Appellees.

_____

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE FOX
Miller, J., concurs
Taubman, J., concurs in part and dissents in part

Announced July 14, 2016

_____

Foster Graham Milstein & Calisher, LLP, David Wm. Foster, Chip G. Schoneberger, Melanie MacWilliams-Brooks, Denver, Colorado, for Plaintiffs-Appellants

Brownstein Hyatt Farber Schreck, LLP, Martha L. Fitzgerald, Carrie E. Johnson, Denver, Colorado; Wood, Ris & Hames, P.C., Todd E. Mackintosh, Denver, Colorado, for Defendants-Appellees

¶ 1     Rangeview, LLC, Pamela Eades, and John Sellery

(collectively Rangeview) appeal the trial court's judgment

affirming, under C.R.C.P. 106(a)(4), the Aurora City Council's

approval of a rezoning application submitted by BFR, LLC (BFR)

and Mitrah Investments and Holdings, LLC (Mitrah).  We affirm.

## I.  Background

¶ 2     BFR owned a rectangular parcel of property located at the

intersection of Havana Street and Kentucky Avenue in Aurora,

Colorado (the property).  The property consists of 1.894 acres of

vacant land measuring 300 feet by 275 feet.  Mitrah is the

developer of the property.  The site plan was proposed as follows:



¶ 3      Rangeview, LLC owns Rangeview estates — which borders the property to the west — and Eades and Sellery each own property in the neighborhoods surrounding the property. In 2012, BFR and Mitrah applied to rezone the property from B-1

(business zoning district) on the east side and R-3 (residential zoning district) on the west side to Aurora's new Sustainable Infill Redevelopment (SIR) Zoning District. BFR's and Mitrah's site plan included a proposal to split the property into two lots, the first to be developed into a gas station with a convenience store and the second to be reserved for a future commercial retail building. In February 2013, Aurora's Planning and Zoning Commission denied the application. BFR and Mitrah appealed the denial to the Aurora City Council (City Council).

¶ 4     City Council conducted a hearing and received testimony from proponents and opponents of the rezoning application. City Council also heard testimony on the goals of SIR zoning and considered the potential utility of BFR's and Mitrah's development plans in the area surrounding the property. City Council approved, in a 6-2 vote, BFR's and Mitrah's request to rezone the property and approved, in a 7-2 vote, the proposed site plan for Lot 1.

¶ 5     Rangeview filed a C.R.C.P. 106(a)(4) action in the district court against the City of Aurora, City Council, BFR, and Mitrah (collectively rezoning proponents) claiming that City Council

3

exceeded its jurisdiction and abused its discretion in granting the application to rezone the property and approve the proposed site plan. During the course of the proceedings, Mitrah purchased the property from BFR and the district court dismissed BFR from the case. The district court concluded that City Council's decision was reasonably supported by the record and that City Council had a reasonable basis for its interpretation of the ordinances governing SIR zoning districts. The district court thus affirmed City Council's decision.

¶ 6     Rangeview appeals the district court's decision, arguing that City Council abused its discretion by (1) approving the site plan when the plan did not include an outdoor gathering space that meets SIR design standards and (2) rezoning the property to SIR zoning when the property does not meet the requirements of an "infill development parcel" as defined in the Aurora Municipal Code.

## II. Standing

¶ 7     The parties' original briefing to this division did not address whether Rangeview had standing to challenge City Council's actions, but this panel sua sponte raised the issue.[1]  *See Moody v. People*, 159 P.3d 611, 616 (Colo. 2007) (appellate courts have authority to address standing sua sponte if there is a sufficient factual record upon which to resolve the issue).  The parties supplied additional briefing on the issue of standing,[2] and we conclude that Rangeview has sufficient standing to proceed with its claims on appeal.

---

[1] This division ordered that the parties submit additional briefing addressing: (1) where in the complaint Rangeview alleged they would suffer an injury in fact to a legally protected interest because the respondents did not include public open space in their proposed gas station/convenience store; (2) if not so alleged, should this appeal be dismissed for lack of sufficient allegations in the complaint regarding standing; (3) where, if at all, do facts establishing standing appear in the record; and (4) what authority, if any, allows this court to rely on those facts of record — if they exist, are uncontroverted, and are not otherwise referenced in the complaint — to conclude there is standing and address the contentions on appeal.

[2] But the additional briefing did not address the first question of this division regarding the lack of a public gathering space.

¶ 8    Standing is a jurisdictional prerequisite that requires a named plaintiff to bring suit to protect a cognizable interest. *Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cty. Comm'rs*, 80 P.3d 871, 877 (Colo. App. 2003).  Whether a plaintiff has standing depends on whether the plaintiff has alleged an injury-in-fact and, if so, whether the injury is to a legally protected or cognizable interest.  *Bd. of Cty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1052 (Colo. 1992).  In an action under the Uniform Declaratory Judgments Law, §§ 13-51-101 to -115, C.R.S. 2015, "the injury-in-fact element of standing is established when the allegations of the complaint, along with any other evidence submitted on the issue of standing, establishes that the regulatory scheme threatens to cause injury to the plaintiff's present or imminent activities."  *Bowen/Edwards Assocs., Inc.*, 830 P.2d at 1053.  Colorado courts provide for broad individual standing.  *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 17.

¶ 9    Colorado case law is inconsistent regarding whether an appellate court may look beyond the four corners of the complaint and examine the contents of the appellate record to

assess whether a party has proper standing to bring an action. *Compare Colo. Gen. Assembly v. Lamm*, 700 P.2d 508, 516 (Colo. 1985) ("If the complaint fails to allege injury, the case must be dismissed."), *and C M I Corp. v. Bd. of Adjustment*, 528 P.2d 409, 410 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)) (courts are not at liberty to go beyond the confines of a pleading when evaluating standing), *with Marks v. Gessler*, 2013 COA 115, ¶ 88 ("[I]n conducting our de novo standing review, we may examine record evidence outside of the complaint.") (*cert. granted* June 23, 2014), *and Bowen/Edwards Assocs., Inc.*, 830 P.2d at 1052 (standing is established if the allegations in the complaint, along with any other evidence submitted on the issue of standing, demonstrate an injury-in-fact), *and Coates v. City of Cripple Creek*, 865 P.2d 924, 926 (Colo. App. 1993) (concluding, based on evidence in the appellate record, that plaintiffs had standing when plaintiffs alleged, at a city council hearing, that their property adjacent to land subject to a rezoning proposal would be adversely affected).

¶ 10    We note that the supreme court in *Lamm*, in articulating the relevant standing framework, was not presented with the issue of

whether a court may look outside of the four corners of a complaint, or whether a court can look to the record to determine standing. *See Lamm*, 700 P.2d at 515-16. And, more recently, the supreme court stated, in *Bowen/Edwards*, that the injury-in-fact component of standing involves an inquiry of the allegations in the complaint along with any other evidence submitted in support of standing. *Bowen/Edwards Assocs., Inc.*, 830 P.2d at 1053. Because the framework articulated in *Bowen/Edwards* is more recent and more specific to our present issue than the aforementioned cases rejecting the ability to look outside of the complaint for evidence supporting standing, we must follow it. *See, e.g.*, *Keller v. People*, 29 P.3d 290, 298 (Colo. 2000) (more recent and more specific case controls).

¶ 11    Therefore, along with the allegations in the complaint, an appellate court may consider testimony and other documentary evidence in the appellate record to determine whether the parties have standing. *See Bowen/Edwards Assocs., Inc.*, 830 P.2d at 1053; *Marks*, ¶ 88; *Durdin v. Cheyenne Mtn. Bank*, 98 P.3d 899, 902-03 (Colo. App. 2004); *Coates*, 865 P.2d at 926.

¶ 12    Rangeview's complaint never alleges that City Council's approval of the proposed site plan or the request to rezone the property will harm Rangeview, LLC, Eades, or Sellery. However, Rangeview presented testimony at the hearing before the City Council that several homes located in Rangeview Estates are located adjacent to the property. Colorado courts have recognized that owners of property adjacent to rezoned land have standing to challenge rezoning that adversely affects them. *See, e.g.*, *Bd. of Cty. Comm'rs v. City of Thornton*, 629 P.2d 605, 609 (Colo. 1981); *Wells v. Lodge Props., Inc.*, 976 P.2d 321, 324 (Colo. App. 1998); *Coates*, 865 P.2d at 926. Rangeview also offered expert testimony that the proposed site plan would result in a decrease in home values in adjacent neighborhoods, including Rangeview Estates. Rangeview's complaint alleges that Eades and Sellery own homes in the Rangeview Estates neighborhood. Therefore, we conclude that the record supports a showing of an injury-in-fact, that Rangeview had standing, and that the trial court had jurisdiction to adjudicate the claims before it. *See Bowen/Edwards Assocs., Inc.*, 830 P.2d at 1052.

¶ 13    Although Rangeview's complaint could have been more complete and specific regarding their alleged injuries relating to the absence from the site plan of an outdoor gathering space, the record supports the conclusion that the properties surrounding the gas station and convenience store would suffer economic and aesthetic harm.  *See Ainscough v. Owens,* 90 P.3d 851, 855 (Colo. 2004) (it is sufficient to allege harm based on aesthetic issues); *see also Thornton,* 629 P.2d at 609 (diminuition in value can support standing).  Because the record supports such a potential injury, we address the issues raised on appeal.

### III.  City of Aurora SIR Districts

### A.  Preservation and Review Standards

¶ 14    The parties agree that Rangeview properly preserved its claims for appeal.

¶ 15    C.R.C.P. 106(a)(4) provides judicial review of a decision of any governmental body or any lower judicial body exercising judicial or quasi-judicial functions to determine whether the body exceeded its jurisdiction or abused its discretion.  *Bd. of Cty. Comm'rs v. O'Dell,* 920 P.2d 48, 49 (Colo. 1996); *Canyon Area Residents for the Env't v. Bd. of Cty. Comm'rs,* 172 P.3d 905, 907

(Colo. App. 2006). The district court has no factfinding authority in such cases, and our review is the same as that exercised by the district court. *Canyon Area Residents*, 172 P.3d at 907. Our review is limited to whether City Council exceeded its authority or abused its discretion in granting the application to rezone the property. *Id.*

¶ 16 A governmental body abuses its discretion when its decision is not supported by any competent evidence in the record. *Id.* "No competent evidence" means that the decision of the governing body was "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304, 1309 (Colo. 1986) (citation omitted). A reviewing court may also consider whether the governing body misconstrued or misapplied the law. *See Canyon Area Residents*, 172 P.3d at 907.

¶ 17 Interpretation of a municipal ordinance involves a question of law subject to de novo review. *MDC Holdings, Inc. v. Town of Parker*, 223 P.3d 710, 717 (Colo. 2010). The same rules of construction apply in interpreting ordinances as in construing statutes. *Walter G. Burkey Tr. v. City & Cty. of Denver*, 2012 COA

11

20, ¶ 8. We look to the plain language of the ordinance in order to give it effect. *Id.*

### B. Outdoor Gathering Space

¶ 18    Rangeview argues that City Council abused its discretion by approving Mitrah's site plan because the plan did not include an outdoor gathering space as mandated by the SIR design standards. We disagree.

### 1. Law

¶ 19    With regard to SIR districts, the Aurora Municipal Code (Code) states that "[t]he design of any proposed development in the SIR district . . . shall include an outdoor gathering space that is appropriate to the situation and scale of the site." Aurora Mun. Code § 146-736(A)(7). According to the Code, "[t]he purpose of the [SIR] district is to allow a compatible mix of commercial, civic and residential uses in areas suitable for infill development and redevelopment," and "[t]he SIR district is intended to be a flexible zoning district that will support new businesses and maximize living choices." § 146-732(A). The Code further provides that "[a]ny development within the SIR district shall fully comply with all applicable City Code

12

requirements, except as may otherwise be specified in this division or in the [SIR] handbook." § 146-733(A); *see also Garrido v. Dudek,* 731 F.3d 1152, 1155 (11th Cir. 2013) (relying on relevant portions of Florida Medicaid handbook when handbook was incorporated by reference in specific relevant regulation).

¶ 20     The SIR Design Handbook states:

> This handbook describes general concepts and guidelines for development and principles of design that are flexible and predictable to implement.  Every element described will not apply to every development.  While the handbook is meant to provide guidance to the design community and a basis for development review for city staff, the city will be open to new ideas and flexible in the interpretation of these guidelines.  These guidelines are not intended to be applied exactly or literally when such application will inhibit beneficial development and redevelopment in the SIR Zoning District.

City of Aurora, *Sustainable Infill and Redevelopment Design Handbook* 3 (April 2012), https://perma.cc/ER35-2XNT.  The handbook further provides that "development or redevelopment projects should plan to provide at least one public space of some type." *Id.* at 20.  However, the handbook's distinct objective is to

13

promote development and redevelopment via its flexible guidelines. *See id.* at 3.

## 2. Analysis

¶ 21 Rangeview argues that the term "shall" in the Code mandates an open gathering space in every SIR district project. *See* Aurora Mun. Code § 146-736(A)(7). However, the Code defaults to the terms of the SIR handbook, which says that projects "should" provide a public space. *Sustainable Infill and Redevelopment Design Handbook* at 20. The use of "should" in the handbook's language indicates discretion. *See* Aurora Mun. Code § 146-2000(M) ("The words 'shall,' 'will,' and 'must' are always mandatory. The words 'may' and 'should' are discretionary terms."); *see also Sheridan Redevelopment Agency v. Knightsbridge Land Co., L.L.C.*, 166 P.3d 259, 264 (Colo. App. 2007). The handbook specifies that it is meant to be "flexible" and is not to be interpreted literally when such an interpretation will inhibit development. *Sustainable Infill and Redevelopment Design Handbook* at 3. And, the Code qualifies its language regarding outdoor gathering spaces by specifying that they be appropriate to the situation and scale of the site. *See* Aurora

14

Mun. Code § 146-736(A)(7).  As the rezoning proponents argue, the size of the property, its location immediately adjacent to a busy street, and the development of a gas station and convenience store on the lot do not create an appropriate situation for an outdoor gathering space.  Because the SIR district is a flexible, pro-development guideline, we decline to overturn City Council's decision purely on the basis that the site plan did not contain some sort of outdoor gathering space.

¶ 22    In making its decision, City Council heard testimony regarding the proximity of the property to the Rangeview Estates residential development and the potential traffic impact the site plan could generate.  The council also heard from a planning supervisor who participated in drafting the SIR zoning ordinance and recommended that the council approve Mitrah's application. The council heard testimony from several individuals and representatives of groups and entities with interests in the area surrounding the property and received hundreds of documents for and against Mitrah's proposed rezoning and site plan application.  City Council considered the following points in favor of approving Mitrah's request:

- The site plan provided considerable new landscaping to the area, including a line of trees to buffer the development from Rangeview Estates.

- A gas station at the property's location on Havana Street would provide a useful refueling option where none existed.

- Uses other than a gas station and convenience store could create more traffic problems for residents of the surrounding neighborhoods.

¶ 23    City Council heard arguments and received supporting evidence and documents from proponents and opponents of the rezoning and considered all of it before voting to approve the site plan.  Because City Council's approval was supported by competent evidence, City Council did not abuse its discretion. *See Canyon Area Residents*, 172 P.3d at 907.

### C.  SIR Zones and "Infill Development Parcel"

¶ 24    Rangeview argues that City Council abused its discretion in rezoning the property to a SIR district when the property does not meet the requirements of an "infill development parcel" as defined in the Code.  We disagree.

16

### 1. Additional Facts

¶ 25    The property's 300-foot western boundary borders Rangeview Estates, which, at the time of City Council's decision, had been developed for less than eight years. This 300-foot border comprises 26.1% of the property's boundaries. The parties do not dispute that less than seventy-five percent of the property's boundaries have been developed for at least ten years.

¶ 26    During the pendency of the zoning application process, an abandoned building — previously a home and then a medical office — occupied the property. That building has since been torn down.

### 2. Law and Analysis

¶ 27    The Code states that SIR zoning districts are appropriate "in areas suitable for infill development and redevelopment." Aurora Mun. Code § 146-732(A). The Code does not specifically define "infill development" or "redevelopment." Rangeview argues that the property does not meet the definition of an "infill development parcel" because it does not have at least seventy-five percent of its borders adjacent to property that has been developed for at

17

least ten years.  For this reason, Rangeview contends that the City Council abused its discretion.  We are not persuaded.

¶ 28    The Code defines an "infill development parcel" as "an area . . . that . . . includes no more than 20 acres of land, and where the land along at least 75 percent of the boundaries of the proposed subdivision . . . has been developed for a period of at least ten years."  Aurora Mun. Code § 146-2001.

¶ 29    The term "infill development parcel" does not appear in the SIR district section of the Code and is only defined in the general definitions section applicable to the entire Code.  *See* Aurora Mun. Code §§ 146-700 to 146-738.  The SIR district section of the Code only references "infill development and redevelopment." Aurora Mun. Code § 146-732(A).  Had the drafters of the SIR zoning ordinance meant for the definition of "infill development parcel" to apply to "infill development and redevelopment," they would have included more specific language to that effect in the ordinance.[3]  *See Burkey Tr.,* ¶ 8 (we look to the plain language of

_____

[3] Rangeview argues that the term "infill development parcel" does not appear in any zoning district ordinances, other than section

18

the ordinance in order to give effect to the drafters' intent); *see also Gessler v. Doty*, 2012 COA 4, ¶ 14 (when two provisions in a code conflict, the more specific prevails).  Without reference in the SIR section of the Code to "infill development parcel," the definition in other sections of the Code is irrelevant to our interpretation.  Rather, as Rangeview admits, the language of the SIR district ordinance uses the term "infill" as a modifier for "development and redevelopment."  Generally, infill means "to fill in."  *Webster's Third New International Dictionary* 1159 (2002).  Thus, the SIR district ordinance's references to development and redevelopment mean to fill in empty land and does not impose additional boundary requirements.

---

146-1101 of the Code, which references the percent of small lots which can be included in an infill development parcel, and, therefore, its inclusion in the definitions section is superfluous if it is not applied to "infill development and redevelopment" as referenced in the SIR district section.  However, the inclusion of the term in the Code on its own provides purpose for the definition and does not mean that the definition should be applied to any other term utilizing similar words.  *See Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 406 (Colo. App. 2004) (we may affirm on any grounds supported by the record).

¶ 30     Because the language's ordinary meaning does not reference any requirement related to the proportions of developed boundaries, we cannot say that City Council abused its discretion by approving Mitrah's rezoning request even though the property would not meet the definition of an "infill development parcel." *See Burkey*, ¶ 8.[4]

## IV.  Conclusion

¶ 31     The judgment is affirmed.

JUDGE MILLER concurs.

JUDGE TAUBMAN concurs in part and dissents in part.

---

[4] Mitrah also argues that, because the property already had a building on it, the proposed construction was properly classified as redevelopment.  Because we conclude that City Council did not abuse its discretion in approving the rezoning request, regardless of whether the proposed plan included development or redevelopment, we need not address this argument.

JUDGE TAUBMAN, concurring in part and dissenting in part.

¶ 32     This case involves the Aurora City Council's (City Council) approval of a rezoning application allowing the development of a convenience store/gas station and the challenge to that approval by Rangeview Estates and two neighbors, Pamela Eades and John Sellery (collectively Rangeview plaintiffs).  Rangeview raised two issues on appeal, arguing that the City Council abused its discretion by rezoning the property without it meeting the requirements of an "infill development parcel" as defined in the municipal code and by approving the site plan without it including an outdoor gathering space required by Aurora's new Sustainable Infill Redevelopment (SIR) zoning district.

¶ 33     Standing is a threshold issue that must be satisfied to decide a case on the merits.  *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004).  To establish standing, a plaintiff must have suffered an injury in fact, and this harm must have been to a legally protected interest.  *Id.*  A legally protected interest "emanates from a constitutional, statutory, or judicially created rule of law that entitles the plaintiff to some form of judicial

21

relief." *Bd. of Cty. Comm'rs v. Bowen/Edwards Assocs.*, 830 P.2d 1045, 1053 (Colo. 1992).

¶ 34    I agree with the majority's conclusion that standing may be based on information contained in the record, together with the allegations of the complaint. *See id.* Under this approach, I conclude that the Rangeview plaintiffs have standing to argue that the City Council abused its discretion in rezoning the property to an SIR district when the property does not meet the requirements of an infill development parcel as defined in the Aurora Municipal Code.

¶ 35    As to the outdoor gathering space issue, I agree that the Rangeview plaintiffs allege they had a legally protected interest because Eades and Sellery live very close to the proposed convenience store/gas station, and Rangeview Estates is also located nearby. However, I respectfully disagree with the majority that the Rangeview plaintiffs have standing to raise the issue of the failure to include an outdoor gathering space at the convenience store/gas station because the Rangeview plaintiffs have not alleged an injury in fact to a legally protected interest.

22

¶ 36    The complaint alleges that the convenience store/gas station plan fails to include an outdoor gathering space; however, the complaint contains no allegations that the Rangeview plaintiffs will be harmed in any way by this failure.

¶ 37    Looking beyond the four corners of the complaint, while some testimony at the hearing before City Council noted generally that the proposed convenience store/gas station did not comply with any of the eight SIR zoning district standards or goals, the Rangeview plaintiffs presented no testimony whatsoever indicating that they would be harmed by the lack of an outdoor gathering space. Although one neighbor of the Rangeview plaintiffs testified before the City Council about the failure to comply with the outdoor gathering space provision, he did not note that any harm would result from the failure of the developer to provide an outdoor gathering space. Significantly, this issue was not raised at all by the Rangeview plaintiffs at the earlier hearing before the zoning commission. Therefore, in my view, neither the record nor the complaint contains sufficient evidence to accord standing to the Rangeview plaintiffs on this issue.

¶ 38   Standing is not conveyed by any injury that is overly "indirect and incidental" to a defendant's action. *Ainscough*, 90 P.3d at 856 (citation omitted). Although usually injury is alleged in terms of physical damage or economic harm, it is sufficient to allege harm based on aesthetic issues. *Id.* In *Reeves v. City of Fort Collins*, 170 P.3d 850, 854 (Colo. App. 2007), a division of this court held that an individual living eight blocks from a development had standing to challenge a city council's characterization of interior living floors of the development project and a rooftop penthouse as mezzanines, thus avoiding the height restrictions of the local zoning code. Similarly, in *Wells v. Lodge Properties, Inc.*, 976 P.2d 321, 324 (Colo. App. 1998), a division of this court held that a property owner had standing to challenge a development project that she alleged would obstruct her views and limit her access to open space. In these decisions, unlike the circumstances presented here, there was a specific allegation that a property owner would be harmed not only by the approval of a development project, but by the specific provision that the property owner challenged.

¶ 39    Here, the Rangeview plaintiffs could easily have alleged that their interest in aesthetic issues in its neighborhood would be harmed by the lack of outdoor gathering space. However, they did not do so. Neither the Rangeview plaintiffs nor the majority points to anywhere in the record where the Rangeview plaintiffs allege that they would suffer aesthetic harm, or any type of harm, by the lack of outdoor gathering space.

¶ 40    A treatise on zoning notes that "to be an aggrieved person one must establish a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest that would concern all members of the community." 4 E.C. Yokley, Zoning Law and Practice § 24-3(a) (4th ed. 2011). Decisions of courts in other jurisdictions have concluded that a plaintiff must allege specific harm resulting from a zoning board decision. *See Valcourt v. Zoning Bd. of Appeals*, 718 N.E.2d 389, 392 (Mass. App. Ct. 1999) (to have standing to appeal a decision of the zoning board, a plaintiff must offer specific facts to establish perceptible harm); *Shelter Island Ass'n v. Zoning Bd. of Appeals*, 869 N.Y.S.2d 615, 617 (N.Y. App. Div. 2008) (petitioner's generalized allegations of increased traffic and the

effect on the water table resulting from the addition of one or two tenants to the subject property are insufficient to establish standing); *Friends of the Rappahannock v. Caroline Cty. Bd. of Supervisors*, 743 S.E.2d 132, 138 (Va. 2013) (proximity alone is insufficient to plead justiciable interest in appealing land-use decision; to demonstrate standing, complaint must also allege sufficient facts showing harm to some personal or proprietary right different from that suffered by the public generally).

¶ 41 Accordingly, I do not believe that the Rangeview plaintiffs alleged that they had suffered any injury in fact. In sum, while I agree with the majority's resolution of the second issue, I would dismiss the Rangeview plaintiffs' first issue for lack of standing.