24CA1603 Barras v BOCC Garfield 06-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1603
Garfield County District Court No. 23CV30032
Honorable Anne K. Norrdin, Judge

Norman T. Barras, Jr.,

Plaintiff-Appellant,

v.

Board of County Commissioners of the County of Garfield and Skyfooze1, LLC,
a Pennsylvania Domestic limited liability company,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

---

Neiley Law Firm, LLC, Richard Y. Neiley, Jr., Glenwood Springs, Colorado, for
Plaintiff-Appellant

Heather K. Beattie, County Attorney, Glenwood Springs, Colorado, for
Defendant-Appellee Board of County Commissioners of the County of Garfield

Holland & Hart LLP, Susan M. Ryan, Kevin P. Giles, Aspen, Colorado, for
Defendant-Appellee Skyfooze1, LLC

¶ 1 After defendant, the Board of County Commissioners of the County of Garfield (BOCC), approved an application for a minor subdivision submitted by Skyfooze1, LLC (the applicant), plaintiff, Norman T. Barras, Jr., sought review in the district court under C.R.C.P. 106(a)(4). The district court affirmed the BOCC's decision.

¶ 2 Barras appeals, arguing that the BOCC abused its discretion in approving the application by waiving certain submission requirements without good cause. We disagree and therefore affirm.

## I. Background

¶ 3 The applicant owns a forty-one-acre parcel of land in Garfield County. In September 2022, it applied to the Garfield County Community Development Department (Department) to subdivide the parcel into two lots. The application for a minor subdivision indicated that each lot would have a single-family home and an accessory or secondary dwelling unit.

¶ 4 The applicant submitted a 100-page application with several attachments, but it requested that the Department waive until the building permit stage two submission requirements of the Garfield

County Land Use and Development Code. *See* Garfield Cnty. Land Use & Dev. Code (LUDC) § 4-202.

¶ 5 The first requirement concerned the proposed onsite wastewater treatment system (OWTS). *See id.* § 4-203(N)(1)(b). Section 4-203(N)(1)(b) requires an applicant to provide evidence that "the OWTS will comply with the County's OWTS requirements and requirements of the [Colorado Department of Public Health and Environment], Water Quality Control Commission." The applicant provided documentation to support its position that an OWTS was feasible on the lots. But the application explained that the OWTS's particular design and siting depended on the location of the buildings, and because those locations would be determined by the eventual lot owners, the applicant could not provide information about the OWTS's compliance with local and state regulations until a later stage of the process.

¶ 6 The second requirement concerned the plans for groundwater drainage. *Id.* § 5-401. Under sections 5-301 and 5-401, an application for a minor subdivision must contain preliminary engineering reports and plans for groundwater drainage and preliminary cost estimates for any proposed improvements. The

2

application noted that no changes to existing grading and drainage were proposed and that no private or public improvements would be necessary. The applicant therefore requested that the eventual lot owners obtain any necessary approvals for grading and drainage changes at the building permit stage.

¶ 7　　In December 2022, Barras, an adjacent property owner, submitted a written objection to the application to the Department director. He argued that there was "no legitimate justification for the requested waivers," as the applicant could simply designate the location of future improvements and provide the required information.

¶ 8　　A few days later, Department staff issued a report recommending approval of the application, including the requested waivers. The report stated that the waivers were "deemed appropriate for the [a]pplication as the development will not be phased and no new public improvements are proposed or required." Department staff recommended conditioning approval on, among other things, plat notes stating that the waived requirements had to be satisfied at the building permit stage. Shortly thereafter, the director approved the application with the recommended conditions.

¶ 9    Barras then initiated a "call-up" of the director's decision to the BOCC, *see id.* § 4-112, repeating the same objections from his December letter, including a concern that the minor subdivision might not have an adequate water supply. Pursuant to the "call-up" procedures, the BOCC held a public hearing on the application. At the hearing, Barras asserted that there was "really no good justification" for the applicant's requested waivers. He maintained that the applicant should designate the location of the buildings, in part so that he could ensure the preservation of his view, and he challenged the reliability of the reported water supply.

¶ 10    At the conclusion of the hearing, the BOCC voted to uphold the director's decision to approve the application. The BOCC later adopted a resolution approving the application subject to various conditions, including that the waived requirements be satisfied at the building permit stage.

¶ 11    Barras sought judicial review under C.R.C.P. 106(a)(4). The district court, in a well-reasoned and comprehensive order, affirmed the decision of the BOCC.

## II. The BOCC's Approval of the Subdivision

¶ 12    Barras argues that the district court erred by affirming the BOCC's decision. He says that the decision constitutes an abuse of discretion because the BOCC did not find good cause to grant the requested waivers and no good cause existed.

### A. Standard of Review

¶ 13    C.R.C.P. 106(a)(4) permits judicial review of a governmental agency action exercising a quasi-judicial role. *Save Our Saint Vrain Valley, Inc. v. Boulder Cnty. Bd. of Adjustment*, 2021 COA 44, ¶ 26. Under Rule 106(a)(4), we review the decision of the governmental body itself, rather than the district court's order affirming that decision. *Alpenhof, LLC v. City of Ouray*, 2013 COA 9, ¶ 9.

¶ 14    Our task "is a limited one." *Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 22. In reviewing the BOCC's decision, we apply the same standard of review as the district court, and we "must affirm unless the governmental entity abused its discretion or exceeded its jurisdiction." *Alpenhof*, ¶ 9. A governmental entity abuses its discretion only if it misapplies the law or if no competent evidence supports its decision. *Whitelaw v. Denver City Council*, 2017 COA 47, ¶ 8. "'No competent evidence'

5

means that the decision of the governing body was 'so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority.'" *Rangeview, LLC v. City of Aurora*, 2016 COA 108, ¶ 16 (citation omitted).

## B.    The BOCC Did Not Abuse Its Discretion

¶ 15    As a preliminary matter, we address Barras's argument that the staff report's summary concerning the waiver requests was inadequate.  Like the district court, we conclude that this argument is waived.

¶ 16    Section 4-202(B) of the LUDC provides that if the applicant requests a waiver of any submission requirements, the Department director "shall notify the [a]pplicant in writing of the determination . . . and include a summary of the decision in the staff report."  The staff report included a summary stating that the requested waivers were "deemed appropriate for the [a]pplication as the development will not be phased and no new public improvements are proposed or required."  To the extent Barras contends that the summary itself is inadequate because it does not sufficiently explain the basis for the director's decision to grant the waivers, that contention is unpreserved.

¶ 17 At no time during the administrative proceedings did Barras ever claim that the staff report's summary was somehow deficient. He did not raise that specific complaint with the director or with the BOCC. His arguments focused on the alleged lack of justification for granting the waivers, not on the particular language contained in the staff report. Nor did he mention the staff report's summary in his C.R.C.P. 106 complaint. The inadequacy of the summary was raised for the first time in briefing to the district court. For that reason, the district court determined that the issue was waived, and we agree.

¶ 18 Issues not raised or addressed in administrative proceedings are not preserved for judicial review. *See Chostner v. Colo. Water Quality Control Comm'n*, 2013 COA 111, ¶ 39. Accordingly, we may not review Barras's contention that the staff report's summary was inadequate.

¶ 19 In any event, it appears that Barras's primary argument goes to the merits — the BOCC did not find good cause for the waivers because there was none. We now turn to that argument.

¶ 20 Under section 4-202(A) of the LUDC, the director may waive any submission requirements if those requirements are

"unnecessary in determining whether the application satisfies applicable standards." In evaluating a waiver request, the director must consider certain criteria, including whether the applicant has "show[n] good cause for the requested waiver" and "[t]he project size, complexity, anticipated impacts, or other factors [that] support a waiver." *Id.* § 4-202(C).

¶ 21    Barras argues that the BOCC had to make an *explicit* finding of good cause before it could approve the applicant's waiver requests. But while the LUDC requires the BOCC to find good cause to grant waivers, it does not say that such a finding must be explicit, and we cannot add language to the municipal code. *See City of Golden v. Sodexo Am., LLC*, 2019 CO 38, ¶ 23 (statutory interpretation rules apply when construing municipal codes); *Larimer Cnty. Bd. of Equalization v. 1303 Frontage Holdings LLC*, 2023 CO 28, ¶ 46 (when construing a statute, court may not add words to the provision).

¶ 22    Indeed, "express factual findings are not a prerequisite to a valid decision by an administrative board if the necessary findings may be implied from the action taken." *Canyon Area Residents for the Env't v. Bd. of Cnty. Comm'rs*, 172 P.3d 905, 909 (Colo. App.

8

2006). As long as the record supports that the BOCC "necessarily acted on the basis" that there was good cause to grant the waivers, and "the state of the evidence is such as would warrant the making of [that] finding," we may conclude that the BOCC implicitly found good cause. *No Laporte Gravel Corp. v. Bd. of Cnty. Comm'rs*, 2022 COA 6M, ¶ 87 (quoting *Sundance Hills Homeowners Ass'n v. Bd. of Cnty. Comm'rs*, 534 P.2d 1212, 1216 (Colo. 1975)).

¶ 23     The staff report acknowledged the waiver requests and recommended that they be granted. At the BOCC hearing, a Department representative reiterated that the Department had considered the waiver requests and determined that waiving the submission requirements was appropriate given that the applicant had agreed to satisfy the requirements at the building permit stage. The BOCC then approved the application, including the requests for waivers. The record therefore supports a conclusion that the BOCC implicitly found that the applicant showed good cause for the requested waivers. *See Canyon Area*, 172 P.3d at 909.

¶ 24     As for whether good cause actually existed, Barras's argument is essentially an invitation for us to reconsider the BOCC's discretionary decision to approve the minor subdivision with the

requested waivers. But as the reviewing court, we may not reweigh the evidence presented to the Department or substitute our own judgment for that of the BOCC when competent evidence supports its decision. *See Stor-N-Lock*, ¶ 33; *Bd. of Cnty. Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996). Our review is limited to ensuring that there is evidence in the record to justify the BOCC's decision. *Stor-N-Lock*, ¶ 22. We conclude that there is sufficient record evidence to justify the BOCC's decision to approve the waivers.

¶ 25    First, with respect to requirements concerning an OWTS, Department staff stated during the pre-application conference that full design of the OWTS requirement could be waived until the building permit stage, as long as the application "show[ed] evidence of the ability of such a system to service the lots." Department staff clarified that "percolation tests and letters from licensed professionals attesting that OWTS will be feasible" would suffice.

¶ 26    Accordingly, the applicant included a geotechnical report prepared in 1995 for one of the proposed subdivided lots that showed, through percolation testing, that the lot was suitable for an OWTS. The applicant acknowledged the age of the report but explained that the report remained relevant because the underlying

10

geology had not significantly changed in the interim. The applicant also supplemented that report with two site-specific OWTS designs prepared in 2020 for adjacent lots and noted that both of the proposed subdivided lots would have sufficient space for OWTS installation in conformance with the law.

¶ 27 Second, with respect to requirements concerning groundwater drainage, the applicant explained that the requirement to submit engineering reports and plans for groundwater drainage did not yet apply, as no changes to existing grading or drainage were presently contemplated. *See* LUDC § 4-202(C)(4) (in evaluating waiver request, director should consider whether "[t]he information is not material to describing the proposal or demonstrating compliance with approval criteria").

¶ 28 Third, the BOCC did not approve *permanent* waivers of either requirement; rather, it conditioned application approval on the applicant's satisfaction of these requirements at the building permit stage. *Cf. King's Mill Homeowners Ass'n v. City of Westminster*, 557 P.2d 1186, 1191 (Colo. 1976) ("The power to impose conditions on rezoning is an exercise of the police power and such conditions are valid as long as they are reasonably conceived."). The BOCC

resolution requires that the recorded plat note this condition of approval so that future buyers have notice of the requirements.

¶ 29    In a single sentence in his opening brief, Barras argues that the waived requirements "provide protections against . . . hazards that cannot be duplicated at the time of building permit application." But he does not explain why that is true or direct us to any authority on that point. Nor does he explain why he would not have a remedy for future lot owners' noncompliance with any conditions imposed by the BOCC. His conclusory assertion cannot override the BOCC's discretionary authority to defer the applicant's compliance with two submission requirements on a finding of good cause.

¶ 30    In sum, we conclude that there is competent record evidence to support the BOCC's decision. Accordingly, we must uphold it. *See Alpenhof*, ¶ 9.

### III.    Disposition

¶ 31    The judgment is affirmed.

JUDGE FOX and JUDGE SCHUTZ concur.