24CA0460 McIntyre v Aspen/Pitkin County 05-01-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0460
Pitkin County District Court No. 22CV30094
Honorable Anne K. Norrdin, Judge

Cameron McIntyre and Patricia Redfield-McIntyre,

Plaintiffs-Appellees,

v.

Aspen/Pitkin County Housing Authority,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

Garfield & Hecht, P.C., Christopher D. Bryan, Aspen, Colorado, for Plaintiffs-Appellees

Thomas Fenton Smith, Carbondale, Colorado, for Defendant-Appellant

¶ 1    Defendant, Aspen/Pitkin County Housing Authority (APCHA), appeals the district court's judgment vacating and setting aside a hearing officer's order requiring plaintiffs, Cameron McIntyre and Patricia Redfield McIntyre (the McIntyres), to sell their home. We affirm the district court's judgment in part and reverse it in part.

## I.    Background

¶ 2    APCHA is a housing authority created by an intergovernmental agreement (IGA) between the City of Aspen and Pitkin County. *See* § 29-1-204.5, C.R.S. 2024 (allowing for establishment of multijurisdictional housing authorities). Through its affordable housing program, APCHA arranges to convey properties to residents at below-market prices and, in exchange, the residents accept deed restrictions on their employment, residency, and ownership of other local real estate.

¶ 3    Since 2000, the McIntyres have owned a home on Riverdown Drive (the North 40 Property) in an APCHA-administered affordable housing subdivision in Aspen. That property is subject to a "Master Deed Restriction Agreement" that (1) sets conditions on the McIntyres' ownership of residential property elsewhere in the Roaring Fork Drainage; (2) establishes administrative procedures

1

for resolving allegations that those conditions have been violated; and (3) contemplates a variety of remedies in the event of a breach.

¶ 4     As relevant here, the deed restriction states that the McIntryes may

> [n]ot own, alone or in conjunction with others, any other developed residential property in those portions of Eagle, Garfield, Gunnison or Pitkin Counties which are part of the Roaring Fork Drainage.

¶ 5     According to APCHA, the McIntyres are in violation of this restriction based on their relationship with CMTR, LLC, a limited liability company that holds title to residential real property in Aspen located on Park Circle (the Park Circle Property), and whose only members, K.M. and L.M., are the couple's two sons. Following an investigation into the relationship between CMTR and the McIntyres, APCHA notified the McIntyres that they had breached the terms of the deed restriction. The McIntyres requested a hearing, after which a hearing officer appointed by the APCHA Board of Directors found that CMTR was Ms. McIntyre's alter ego. Accordingly, even though Ms. McIntyre's name was not on the deed for the Park Circle Property, the hearing officer found that she "effectively owned" that parcel via her relationship with, and control

2

over, CMTR. Applying the equitable doctrine of veil piercing, the hearing officer ruled that, due to Ms. McIntyre's effective ownership of the Park Circle Property, she was in violation of the deed restriction. As a consequence, the hearing officer ordered the McIntyres to sell the North 40 Property.

¶ 6 The McIntyres filed a C.R.C.P. 106(a)(4) petition challenging the hearing officer's decision. The district court reversed. After rejecting jurisdictional and procedural arguments raised by both parties, the court held that (1) the hearing officer abused his discretion and exceeded his authority by piercing the veil of CMTR; (2) the deed restriction did not bar CMTR from owning the Park Circle Property, even though the McIntyres' minor children were its only members; (3) CMTR was an indispensable party to the proceedings but had not been joined; and (4) the hearing officer did not have authority to order the sale of the North 40 Property. APCHA appeals the district court's ruling.

## II. Administrative Exhaustion

¶ 7 At the outset, we consider APCHA's argument that the McIntyres needed to administratively appeal the hearing officer's decision to the APCHA Board of Directors before filing their C.R.C.P.

106(a)(4) petition in the district court, and that their failure to do so deprived the district court of subject matter jurisdiction. We perceive no error.

¶ 8 APCHA has periodically updated its IGA and Affordable Housing Guidelines since its inception. The 2022 guidelines, which APCHA purportedly followed here, provide for two levels of administrative review in the event that APCHA alleges a homeowner has violated the terms of the deed restriction: a hearing before a hearing officer and an appeal to APCHA's Board of Directors. The 2022 guidelines specify that the decision by the APCHA Board of Directors serves as final agency action for the purpose of Rule 106(a)(4) judicial review.

¶ 9 However, the North 40 Property deed states the property is not "subject to Aspen/Pitkin County Affordable Housing Guidelines adopted subsequent to 1996/1997." The 1996/1997 guidelines do not mention a hearing officer at all, let alone as part of APCHA's grievance procedures. Additionally, the North 40 Property deed outlines its own procedure for a breach of the agreement's terms. Paragraph 11 states:

In the event a violation of this Agreement is discovered, the APCHA shall send a notice of violation to the Owner detailing the nature of the violation and allowing the Owner fifteen (15) days to cure. Said notice shall state that the Owner may request a hearing before the APCHA Board of Directors within fifteen (15) days to determine the merits of the allegations. If no hearing is requested and the violation is not cured within the fifteen (15) day period, the Owner shall be considered in violation of this Agreement. If a hearing is held before the APCHA, the decision of the APCHA based on the record of such hearing shall be final for the purpose of determining if a violation has occurred and binding on the APCHA.

¶ 10    In its C.R.C.P. 106(a)(4) briefing, APCHA asserted that the district court did not have subject matter jurisdiction over the McIntyres' petition because the McIntyres had not administratively appealed the hearing officer's ruling to the APCHA Board of Directors. The district court disagreed, concluding that the "plain language of the Deed Restriction . . . contemplates one hearing before APCHA before the decision is considered 'final,'" and that the

5

APCHA Board of Directors provided the McIntyres with the required hearing by delegating its authority to a hearing officer.[1]

¶ 11     Reviewing the district court's ruling de novo, *see Liberty Bankers Life Ins. Co. v. First Citizens Bank & Tr. Co.*, 2014 COA 151, ¶ 15, we agree that the McIntyres exhausted their administrative remedies. The North 40 Property deed states that a property owner served with a notice of violation "may request a hearing before the APCHA Board of Directors." It is undisputed that the McIntyres requested a hearing after being served with the notice of violation, and that APCHA delegated its authority to hold that hearing to a hearing officer. The fact that the 2022 APCHA guidelines contemplate a second level of administrative review is irrelevant, because the deed restriction provides that only the 1996/1997 guidelines — which contemplate only a single administrative proceeding — control. Accordingly, because APCHA delegated its authority to hold the required hearing to a hearing officer and the 1996/1997 guidelines do not require or provide for additional

---

[1] In the alternative, the district court ruled "the issues at stake in this review take the case outside the purview of the exhaustion doctrine." Because we agree that the McIntyres exhausted their administrative remedies, we do not address this question.

administrative review, the hearing officer's ruling was a final agency decision and the district court had jurisdiction to review it under C.R.C.P. 106(a)(4).[2]

### III. Violation of the Deed Restriction

¶ 12     Turning to the merits of APCHA's appeal, we consider whether the hearing officer abused his discretion or exceeded his jurisdiction when he (1) found that Ms. McIntyre had violated the deed restriction because she "effectively owned" the Park Circle Property via her relationship with CMTR; and (2) applied the doctrine of veil piercing to impose a remedy — i.e., the compulsory sale of the North 40 Property — for the violation.  The district court disapproved of the hearing officer's ruling in its entirety.  Relying on the framework established by the North 40 Property's deed restriction, we agree with some, but not all, of the court's conclusions.  In the end, we hold that while the hearing officer appropriately determined the ownership of the Park Circle Property,

---

[2] We decline to address APCHA's appellate argument concerning the timeliness of the hearing officer's decision.  Although the McIntyres argued in the district court that the administrative ruling was void because it was untimely, they abandoned that issue on appeal and we are not persuaded that any exceptions to the mootness doctrine apply.

he exceeded his authority when he purported to exercise equitable power and impose a remedy for the violation.

## A. Standard of Review

¶ 13    "C.R.C.P. 106(a)(4) provides the exclusive remedy for reviewing a quasi-judicial decision made by a government entity." *Bd. of Cnty. Comm'rs v. Sundheim*, 926 P.2d 545, 548 (Colo. 1996) (citing *Colo. State Bd. of Land Comm'rs v. Colo. Mined Land Reclamation Bd.*, 809 P.2d 974, 982 (Colo. 1991)). "Review of a governmental body's decision pursuant to Rule 106(a)(4) requires an appellate court to review the decision of the governmental body itself rather than the district court's determination regarding the governmental body's decision." *Bd. of Cnty. Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996). "The district court exercises no factfinding authority in such cases, and we engage in the same type of record review as did the district court." *Canyon Area Residents for the Env't v. Bd. of Cnty. Comm'rs*, 172 P.3d 905, 907 (Colo. App. 2006).

¶ 14    "When reviewing a C.R.C.P. 106(a)(4) claim, a court must affirm unless the governmental entity abused its discretion or exceeded its jurisdiction." *Alpenhof, LLC v. City of Ouray*, 2013 COA 9, ¶ 9.  A governmental entity "exceeds its jurisdiction or

8

abuses its discretion only if it either misapplies the law or no competent record evidence supports its decision." *Id.* An action by an agency is not arbitrary or an abuse of discretion when the reasonableness of the agency's action is open to a fair difference of opinion, or when there is room for more than one opinion. *Colo. Health Consultants v. City & Cnty. of Denver*, 2018 COA 135, ¶ 11.

### B.  Analytical Framework

¶ 15    The deed restriction divides enforcement of its provisions into four distinct phases.

- Notice: APCHA initiates enforcement proceedings by mailing the homeowner a "notice of violation" "detailing the nature of the violation and allowing the Owner fifteen (15) days to cure."

- Hearing: A homeowner who disagrees with the notice of violation may "request a hearing before the APCHA Board of Directors . . . to determine the merits of the allegations."

- Ruling on Notice of Violation: APCHA's decision after a hearing "shall be final for the purpose of determining if a violation has occurred."

- Remedy and Enforcement: If the homeowner "fails to cure any breach" that APCHA identifies following a hearing, APCHA may "resort to any and all available legal action, including, but not limited to, specific performance of this Agreement."

¶ 16    APCHA's current procedures, which are in the record before us, follow the same general contours, but they are substantially more detailed and, importantly for our analysis, provide that the hearing officer "may impose a remedy appropriate to the case, which may include a requirement for the owner to pay a fine and/or sell the subject property."[3]  The hearing officer may also "direct that legal action be taken to enforce its decision."

### C.    Enforcement Authority

¶ 17    We begin with the remedy imposed by the hearing officer because, regardless of his ruling on the merits of the notice of violation, he nonetheless exceeded his authority when he ordered the McIntyres to sell the North 40 Property.  In contrast to the

---

[3] We express no opinion regarding the hearing officer's authority to impose remedies outlined in the 2022 APCHA guidelines as that issue is beyond the scope of this appeal.

10

current version of APCHA's procedures, the McIntyres' deed restriction only empowers APCHA to determine whether a homeowner is in breach of the agreement. It does not authorize APCHA to impose a remedy and instead provides only that APCHA may specifically enforce its terms through "any and all available legal action."

¶ 18 The district court found that "[t]his remedy is plainly a reference to a lawsuit filed in a court of law to enforce APCHA's rights under the Deed Restriction, not to an administrative declaration by the APCHA board or its designated hearing officer in the nature of an injunction." Applying the plain and ordinary meaning of the language in the deed restriction, *see Meyerstein v. City of Aspen*, 282 P.3d 456, 458 (Colo. App. 2011), we agree with the district court's interpretation. The deed restriction does not empower APCHA to impose remedies on its own; instead, it provides that APCHA must rely on judicial enforcement via "any and all available legal action." Accordingly, regardless of the merits of the notice of violation, the district court correctly determined the hearing officer exceeded his authority when he ordered the McIntyres to sell the North 40 Property.

### D. Merits of the Notice of Violation

¶ 19    We turn next to the merits of the notice of violation — specifically, the hearing officer's finding that Ms. McIntyre "effectively owned the [Park Circle] [P]roperty as she controlled its rental use, its bank accounts, its disbursement of funds to related entities she owned, and paid personal obligations without any corporate resolution authorizing her to do so." The district court disapproved of these findings because the hearing officer made them within the framework of its corporate veil-piercing analysis, which, among other things, the court found was a judicial function that has no application outside the context of the enforcement of judgments.

¶ 20    We conclude that, even though the hearing officer erred by imposing an equitable *remedy*, that error does not affect the hearing officer's authority to determine *the existence of a violation* of the deed restriction or the sufficiency of his factual findings concerning ownership. Though the hearing officer characterized his own analysis as "veil piercing," that characterization is neither controlling nor relevant. The question on review is simply whether the record supports the hearing officer's factual finding that Ms.

12

McIntyre effectively owns the Park Circle Property and, thus, is in violation of the deed restriction. We conclude that it does. *See Alpenhof*, ¶ 9 (explaining that, under C.R.C.P. 106(a)(4), a court must affirm unless the governmental entity abused its discretion, meaning that no competent record evidence supports its decision).

¶ 21    "A common idiom describes property as a 'bundle of sticks' — a collection of individual rights which, in certain combinations, constitute property." *United States v. Craft*, 535 U.S. 274, 278 (2002); 63C Am. Jur. 2d *Property* § 1, Westlaw (database updated Jan. 2025). "In its precise definition, 'property' denotes the legal interest, or aggregate of legal relations, appertaining to a physical object or thing, not the object or thing itself." 63C Am. Jur. 2d *Property* § 1. It has also been described as "the unrestricted and exclusive right to a thing, the right to dispose of it in every legal way, to possess it, use it, and to exclude everyone else from interfering with it." *Id.* (citing *Wash. Med. Ctr., Inc. v. United States*, 545 F.2d 116 (Ct. Cl. 1976)); *see also Mulberry Frontage Metro. Dist. v. Sunstate Equip. Co.*, 2023 COA 66, ¶ 28 ("Black's Law Dictionary defines 'ownership' as '[t]he bundle of rights allowing one to use,

manage, and enjoy property, including the right to convey it to others.'" (quoting Black's Law Dictionary 1332 (11th ed. 2019))).

¶ 22    The hearing officer found that Ms. McIntyre possessed all of these rights — the right to convey, use, manage, and enjoy the Park Circle Property — without regard to whether she was acting in her individual capacity or her capacity as CMTR manager.

¶ 23    To start, Ms. McIntyre possessed the necessary rights to convey the Park Circle Property in her individual capacity.  CMTR did not authorize Ms. McIntyre to acquire property on its behalf until May 31, 2017, when it filed a "Statement of Authority" pursuant to section 38-30-172, C.R.S. 2024, that identified Ms. McIntyre as a person "authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property."  Two months prior, however, on March 24, 2017, Ms. McIntyre signed a contract to purchase the Park Circle Property, ostensibly in her capacity as "Manager" of CMTR.  Around the same time, she also opened a bank account in CMTR's name and, on May 30, 2017, deposited funds to purchase the Park Circle Property into that

account.[4]  Without the actions that Ms. McIntyre purportedly performed on behalf of CMTR before being authorized to do so, CMTR could not have closed on the Park Circle Property. Accordingly, the record supports the hearing officer's finding that Ms. McIntyre possessed the rights necessary to convey the Park Circle property in her individual capacity.

¶ 24    The record also supports the hearing officer's finding that Ms. McIntyre possessed the right to use and manage the Park Circle Property in her individual capacity.  The June 1, 2017, property management agreement that provided Ms. McIntyre with the authority to rent and manage the Park Circle Property was not signed by her older child, K.M., in his capacity as managing member — and he did not sign it *at all* until after APCHA submitted the notice of violation against the McIntyres in 2022.[5]  Nevertheless,

---

[4] Most of these funds — more than $1,000,000 — came from a mortgage that the McIntyres took out on the deed-restricted North 40 Property.  The remainder — approximately $114,000 — came from the McIntyres' savings and was gifted to their two minor children.

[5] Ms. McIntyre claimed at the hearing that she was "operating under an undescribed 'oral' contract" when managing the property. While the hearing officer found her testimony "patently not credible," he also deemed that testimony "irrelevant" given that it was contradicted by "written evidence to the contrary."

despite the lack of contemporaneous written authorization, Ms. McIntyre dictated the use of the Park Circle Property and managed it herself. Among other things, she signed leases and collected rental income on the property from 2017 to 2020 and also filed taxes on behalf of CMTR (and, the hearing officer found, understated the amount of rental income the Park Circle Property took in by more than $100,000).

¶ 25 Finally, Ms. McIntyre possessed the right to enjoy the property. The hearing officer found, with record support, that she used the rental income from the Park Circle Property to make payments on the mortgage that the McIntyres took out on the North 40 Property, pay other companies they owned, and pay taxes on another property the McIntyres owned in Fort Collins. Given the hearing officer's credibility findings, nothing in the record shows that Ms. McIntyre was authorized, at the time those payments were made, to use these "enjoyments" to make payments on behalf of CMTR for its debts or the McIntyres' personal debts.

¶ 26 Whether CMTR also possessed simultaneous, corresponding rights is of no consequence, as is the fact that CMTR is the record owner of the Park Circle Property. Substantial evidence supports

the hearing officer's findings, and because the deed restriction prohibited Ms. McIntyre from owning any other real property in the Roaring Fork Drainage "alone or in conjunction with others," we conclude that the hearing officer correctly determined that Ms. McIntyre's interest in the Park Circle Property violated that provision of the agreement.

## IV. Remaining Issues

¶ 27     Given our conclusion that the deed restriction did not authorize the hearing officer to impose an equitable remedy, we need not reach the McIntyres' argument that CMTR's corporate veil could not be pierced without making it a party to the administrative proceedings or that APCHA violated the McIntyres' due process rights "by changing remedies mid-way through the hearing."

## V. Attorney Fees

¶ 28     Paragraph 13 of the North 40 Property deed states that in the event of litigation, "the prevailing party shall be entitled to recover damages and costs, including reasonable attorneys' fees." Both parties request an award of appellate fees under this provision, and neither party argues that it should not apply. Given the mixed disposition of this appeal, we decline to award attorney fees to

either party under this provision.  *See Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 503-04 (Colo. App. 2003).

## VI.    Disposition

¶ 29      We affirm that portion of the judgment reversing the hearing officer's order requiring that the McIntyres sell the North 40 Property.  We reverse that portion of the judgment reversing the hearing officer's order determining that the McIntyres violated the deed restriction.

JUDGE HARRIS and JUDGE PAWAR concur.