# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sally Schwartz,  :
          Appellant  :
  :
  :
          v.  :  No. 183 C.D. 2017
  :  Argued: October 17, 2017
Chester County Agricultural Land  :
Preservation Board and Arborganic  :
Acres  :


Sally Schwartz  :
  :
          v.  :  No. 226 C.D. 2017
  :  Argued:  October 17, 2017
Chester County Agricultural Land  :
Preservation Board and Aborganic  :
Acres  :
  :
Appeal of:  Chester County  :
Agricultural Land Preservation Board  :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge (P.)
               HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**                **FILED:  March 2, 2018**

Before this Court are the cross-appeals of the January 11, 2017 order of the Court of Common Pleas of Chester County (Trial Court) filed by the designated appellant Sally Schwartz (Appellant) and the Chester County Agricultural Land

Preservation Board (Board).[1] For the following reasons, we reverse the Trial Court's order insofar as it denied the Board's motion to dismiss Appellant's Petition for Review.

On November 25, 2015, Appellant initiated this action by sending a document entitled "Formal Complaint," to the Board. (Formal Complaint, Reproduced Record (R.R.) at 123a-130a.) The "Formal Complaint" alleges that land located at 901 Cherry Hill Lane in North Coventry Township, Chester County, owned by E. Kent High, Jr. and Corrine High (collectively Grantors), and known as "High Farm," is being used in a manner that violates the conservation easement (Easement) that Grantors entered into with North Coventry Township, Chester County, and the Board (collectively Grantees). (*Id.*; Easement, R.R. at 346a-365a.) The Easement burdens 64.5 acres of High Farm (the Property) pursuant to the terms of the 2003 Northern Chester County Agricultural Conservation Easement Challenge Grant Program. (Northern Chester County Agricultural Conservation Easement Challenge Grant Program Guidelines, R.R at 171a-201a.) This program was established by Chester County in accordance with Pennsylvania law to protect and conserve prime agricultural farmland by facilitating the purchase of easements that limit development and use of agricultural land for nonagricultural purposes. (*Id.*)

Subsequent to Grantors' execution of the Easement, E. Kent High and Robert MacMillian, partners in Arborganic Acres, LLP (Arborganic), informed the Board at a November 17, 2009 meeting that Arborganic intended to use a portion of the Property to mix and process organic mulch both for High Farm and for public sale. In the minutes of the meeting, the Board noted that "staff would continue to

---

[1] Arborganic Acres, LLP, is not participating in this appeal.

monitor that the [Property] remains in compliance with the [Easement]." (Board Minutes 11/17/09, R.R. at 367a.) Arborganic received an On-Farm Source Separated Composting permit from the Pennsylvania Department of Environmental Protection (DEP) in December 2009, and then began operating an organic composting facility on 5 acres of the Property. Since issuing the permit, DEP has received more than 80 complaints from surrounding neighbors and inspected the site over 40 times. (DEP Letter 9/12/2014, R.R. at 394a-396a.) Following complaints, the Board made 7 site visits to the Property in 2014 to inspect and determine whether there were violations of the Easement. (2014 Easement Monitoring Inspection Report, R.R. at 372a-373a; Board Minutes 08/26/14, R.R. at 389a-391a.)

In her "Formal Complaint," Appellant contends that Arborganic is operating an industrial waste collection and processing facility on the Property and she requested that the Board take action to enforce the terms of the Easement and bring the Property into compliance with the constraints burdening conserved agricultural land in Chester County. (Formal Complaint, R.R. at 123a-130a.) Following receipt of the "Formal Complaint," the Board visited the Property to inspect the composting operation first hand and pose questions to Arborganic. (Letter to Kent High 01/06/16, R.R. at 263a.) The Board also held a meeting to allow members of the public to voice their concerns regarding Arborganic's operations at the Property. (Hearing Transcript 04/26/16, R.R. at 267a-326a.) On May 25, 2016, the Board sent a letter to Appellant's counsel and counsel for Arborganic stating that "[t]he operations taking place upon the [Property] appear to be consistent with the terms of the [Easement] in place." (Letter to Appellant and Arborganic Acres' Counsel 05/25/16, R.R. at 121a-122a.)

Appellant filed a Petition for Review of the Board's letter with the Trial Court. By motion, the Board and Arborganic sought to dismiss the Petition on the basis that Appellant lacked standing and that the May 25, 2016 letter from the Board was not an adjudication. On January 11, 2017, the Trial Court issued an order denying the motion to dismiss and denying the Petition; in a footnote, the Trial Court addressed its reasoning for ruling against Appellant on the merits but did not address the Board's argument that the Petition should be dismissed, concluding it was moot. (Trial Court's order, R.R. at 11a-12a.) Appellant and the Board filed cross-appeals of the Trial Court's order with this Court. On April 20, 2017, the Trial Court issued a Pennsylvania Rule of Appellate Procedure 1925(a) opinion.

In its Rule 1925(a) opinion, the Trial Court described the activities taking place on the Property as follows:

> Pursuant to a lease from the [Grantors], [Arborganic] operates an organic composting business on land subject to the Easement. The business accepts manure, yard waste, and some food processing waste from the surrounding area to create organic compost which is then used on the owner's farm and other local properties.

(Trial Court 1925(a) Op. at 1-2.) The Trial Court distilled the issues to an argument by Appellant that "the use of the [Property] is limited to 'agricultural production' and other acts specifically permitted by the terms of the [Easement]," and an argument by the Board and Arborganic that "the language of the [Easement] is broad enough to include all normal farming operations and that Arborganic's use come[s] within the ambit of 'normal farming operations,'" as that term is defined by the Agricultural Area Security Law[2] (AASL). (*Id*. at 3.) The Trial Court concluded that

---

[2] Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§ 901-915.

it is impossible to have agricultural production without normal farming operations and, therefore, by permitting agricultural production the Easement necessarily permits normal farming operations. (*Id*. at 4.) In reaching this conclusion, the Trial Court relied in part upon the purpose identified in the Department of Agriculture Regulations in the Pennsylvania Code (Agriculture Code) for the county easement purchase program, which includes to "protect normal farming operations in agricultural security areas from incompatible nonfarmland uses that may render farming impracticable," and to "protect normal farming operations from complaints of public nuisance against normal farming operations." 7 Pa. Code § 138e.14(3), (4); (Trial Court 1925(a) Op. at 4). The Trial Court also concluded that Appellant had standing to bring her appeal and that the Board had authority to enforce the terms of the Easement, but that the issues were moot in light of the Trial Court's decision on the merits. (Trial Court 1925(a) Op. at 2, 5.)

Before this Court, Appellant argues that the current use of the Property violates the terms of the Easement and the AASL. Appellant contends that the Board has authority to enforce the terms of the Easement and a duty to exercise that authority. Appellant further contends that if this Court were to conclude that the Board's letter was not an adjudication appealable to the Trial Court, then her appeal should have been treated as a complaint by the Trial Court and this Court should still exercise appellate review pursuant to Section 708(b) of the Judicial Code, 42 Pa. C.S. § 708(b).[3] The Board argues that Appellant does not have standing and that the

---

[3] Section 708(a) of the Judicial Code provides that as a general rule, "No objection to a governmental determination shall be defeated by reason of error in the form of the objection or the office of clerk of court in which the objection is filed." Addressing appeals specifically, Section 708(b) of the Judicial Code provides:

> If an appeal is improvidently taken to a court under any provision of
> law from the determination of a government unit where the proper

5

letter issued by the Board following its receipt of Appellant's "Formal Complaint" is not an appealable adjudication.  The Board also argues that if this Court were to reach the merits of Appellant's argument, then this Court should affirm the Trial Court's order because Arborganic's mulching operation is permissible under the terms of the Easement and applicable Pennsylvania law, including the AASL.  For the following reasons, we hold that Appellant does not have a third-party right to enforce the terms of the Easement and that the letter provided to Appellant and Arborganic by the Board is not an adjudication appealable to the Trial Court.

Appellant is not a party to the Easement.  The terms of the Easement do not provide third-parties with the right to enforce the Easement.  The regulations under which Grantors applied for and received the Easement—the 2003 Northern Chester County Agricultural Conservation Easement Challenge Grant Program—do not provide for a third-party right of enforcement.[4]  However, paragraph 11 of the Easement does specifically provide the Grantees with the power to determine if there has been any actual or threatened violation of the Easement and the right to demand corrective action and other remedies, including damages.  (Easement, ¶11, R.R. at 352a-353a.)  Therefore, while the terms of the Easement, which are first and foremost the polestar of our inquiry, do address and provide for enforcement of the

mode of relief is an action in the nature of equity, mandamus, prohibition, quo warranto or otherwise, this alone shall not be a ground for dismissal, but the papers whereon the appeal was taken shall be regarded and acted on as a complaint or other proper process commenced against the government unit or the persons for the time being conducting its affairs and as if filed at the time the appeal was taken.

42 Pa. C.S. § 708(b).  However, the error in the instant matter is one of substance, not form.

[4] *See* Chester County Agricultural Conservation Easement Program Regulations (R.R. at 203a-261a.)

6

Easement, the terms do not provide a mechanism for Appellant to enforce any violation, threatened or actual.

The AASL likewise does not provide Appellant with a third-party right of enforcement. The AASL grants primary power to enforce agricultural conservation easements to the county board, *see* 3 P.S. § 914.1(b)(2)(C)(xv), (xvii). If the county board fails to act, as was the case alleged in the instant matter, the State Agriculture Land Preservation Board (State Board) is permitted to institute and prosecute enforcement actions. *See* 7 Pa. Code § 138e.206(d); *see also* 3 P.S. § 914.1(a). The AASL does not contain provisions establishing a procedure whereby a third party may institute and prosecute an enforcement action. The absence of a third-party right of enforcement is underscored by the presence of statutory language providing for third-party participation in the designation of an agricultural security area. Prior to participation in the easement purchase program, it is necessary for a property to be designated as an agricultural security area and the AASL provides for third-party participation in the creation, composition, modification, rejection or termination of an agricultural security area. *See* 3 P.S. § 905-910. In such circumstances, the AASL requires both that public hearings be held in accordance with the Sunshine Act,[5] *see* 3 P.S. § 906, and that "any party in interest aggrieved by a decision or action of the governing body relating to the creation, composition, modification, rejection or termination of an agricultural area may take an appeal to the court of common pleas." 3 P.S. § 910. Such a remedy is noticeably absent in the portion of the AASL related to enforcement of agricultural conservation easements. 3 P.S. § 914.1(a), (b)(2)(C)(xv)& (xvii); 7 Pa. Code § 138e.206(d).

---

[5] 65 Pa. C.S. §§ 701-716.

7

In addition to the AASL, the Easement draws upon the Conservation and Preservation Easements Act[6] (CPEA) to inform its terms. However, the CPEA, like the AASL and the explicit terms of the Easement, does not provide Appellant with standing to bring a third-party enforcement action. The CPEA specifically identifies a list of persons who have standing to bring a legal or equitable action enforcing an easement. Section 5(a) of the CPEA provides standing to bring a legal or equitable action affecting a conservation or preservation easement to:

> (1) An owner of the real property burdened by the easement.
>
> (2) A person that holds an estate in the real property burdened by the easement.
>
> (3) A person that has any interest or right in the real property burdened by the easement.
>
> (4) A holder of the easement.
>
> (5) A person having a third-party right of enforcement.[7]
>
> (6) A person otherwise authorized by Federal or State law.
>
> (7) The owner of a coal interest in property contiguous to the property burdened by the easement or of coal interests which have been severed from the ownership of the property burdened by the easement.

---

[6] Act of June 2001, P.L. 390, 32 P.S. §§ 5051-5059.

[7] This term "third-party right of enforcement" is defined by the CPEA as "[a] right provided in a conservation easement to enforce any of its terms, granted to a governmental body, charitable corporation, charitable association or charitable trust, which, although eligible to be a holder, is not a holder." 32 P.S. § 5053.

32 P.S. § 5055(a)(1)-(7).

Appellant does not fall within any of the limited categories of persons who have standing under the CPEA. Appellant, however, argues that under Section 5(a)(6) she is a person otherwise authorized by Federal or State law because she has standing under the Local Agency Law.[8] Appellant's argument that she has standing under the Local Agency Law is intertwined with the second issue raised by the Board, which is its contention that the May 25, 2018 Letter it provided to Appellant and Arborganic was not an adjudication.

As a general rule, the Local Agency Law applies to all local agencies even where no appeal is provided for. 2 Pa. C.S. § 751. The Local Agency Law provides that the "provisions of this subchapter shall apply to any adjudication which under any existing statute may be appealed to a court of record, but only to the extent not inconsistent with such statute." 2 Pa. C.S. § 751(b). Furthermore, the Local Agency Law provides standing to appeal to "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication." 2 Pa. C.S. § 752. Appellant contends that the letter she received from the Board following her "Formal Complaint," is an adjudication made appealable by the Local Agency Law. We disagree and hold that the letter reflects the Board's exercise of its prosecutorial discretion.

This Court has consistently held that "when an agency considers whether or not to take an enforcement action, it exercises prosecutorial discretion that is beyond judicial review." *Sinkiewicz v. Susquehanna County Board of Commissioners*, 131 A.3d 541, 548 (Pa. Cmwlth. 2015) (citing *In re Frawley*, 364 A.2d 748, 749 (Pa. Cmwlth. 1976)). Appellant has not identified a statute that

---

[8] 2 Pa. C.S. §§ 101-106, 551-555, 751-754.

9

creates a process for complaints to be filed with the Board or that otherwise imbues the Board with quasi-judicial functions. Instead, the AASL places both the county board and the State Board in a prosecutorial role, requiring them to inspect the eased land annually or if there is reasonable cause to believe that a provision of the easement is being violated, and to notify the owner by certified mail if a violation is found. 3 P.S. § 914.1(a), (b)(2)(C)(xv), (xvii). The AASL does not create a forum where a landowner or other party has an opportunity to be heard concerning either allegations of a violation or violations found by the Board following inspection.

The Agricultural Code further defines the procedure for inspecting and enforcing an easement, providing that for enforcement actions the county board "shall commence and prosecute an action in the court of common pleas of the county in which the restricted land is located seeking an order requiring correction of the violation, enjoining further violation of the terms of the easement, and other appropriate relief." 7 Pa. Code. § 138e.206(a). The Agricultural Code also permits the State Board to institute an action in the court of common pleas and recover costs and attorneys' fees from the county board should the county board fail to timely prosecute an enforcement action. 7 Pa. Code § 138e.206(d). These provisions are notable in three ways. First, they grant enforcement authority to the county board and the State Board. Second, they create a check to ensure that the county board properly executes its enforcement duties by permitting the State Board to recoup costs and fees incurred should it have to act due to the county board's failure to act. Finally, they reserve the judicial function to the court of common pleas of the county in which the eased land is located.

10

Even if the May 25, 2017 Letter issued by the Board was not beyond judicial review, the Letter would not meet the criteria of an adjudication. The Local Agency Law defines an "adjudication," as:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court…

2 Pa. C.S. § 101. Accordingly, an adjudication requires two elements: (1) it must be a final action; and (2) it must affect personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding. *See Merrell v. Chartiers Valley School District*, 855 A.2d 713, 717 (Pa. 2004); *Guthrie v. Borough of Wilkinsburg*, 478 A.2d 1279, 1281 (Pa. 1984). The Board's May 25, 2017 Letter is not a final action; the Board has a continuing duty to inspect the Property and to ensure compliance with the terms of the Easement. Even if the Board had found a violation and issued a notice to the Grantors, the notice of violation would still not be a final action because the AASL requires the Board to provide the Grantors with the opportunity to take corrective action. 3 P.S. § 914.1(b)(2)(C)(xv), (xvii); 7 Pa. Code §§ 138e.205-138e.206.

Appellant argues that following her "Formal Complaint," the Board established a procedure that included inspecting the Property, issuing a letter to Arborganic that reflected the results of the inspection, appointing counsel, conducting a hearing at which evidence and argument was heard, and then issuing its May 25, 2017 Letter to Appellant as a final action. However, Appellant's

narrative merely reconstructs the extent to which she attempted to dragoon the Board into exercising powers that the General Assembly has not granted it.

Accordingly, we reverse the order of the Trial Court insofar as it denied the Board's motion to dismiss Appellant's petition for review.[9]

**_____**
**JAMES GARDNER COLINS, Senior Judge**

---

[9] Having concluded that the Trial Court erred in denying the Board's motion to dismiss and reaching the merits of Appellant's Petition for Review, we do not reach the merits of the arguments raised by Appellant's appeal of that portion of the Trial Court's order denying the Petition for Review.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sally Schwartz,               :
         Appellant       :
                        :
           v.               :    No. 183 C.D. 2017
                        :
Chester County Agricultural Land   :
Preservation Board and Arborganic  :
Acres                     :


Sally Schwartz             :
                        :
           v.               :    No. 226 C.D. 2017
                        :
Chester County Agricultural Land   :
Preservation Board and Aborganic  :
Acres                     :
                        :
Appeal of: Chester County      :
Agricultural Land Preservation Board  :

# O R D E R

AND NOW, this 2nd day of March, 2018, that portion of the January 11, 2017 order of the Court of Common Pleas of Chester County denying the motion to dismiss filed by the Chester County Agricultural Land Preservation Board is hereby REVERSED and this matter is REMANDED to the Court of Common Pleas of Chester County with instructions to dismiss Appellant Sally Schwartz's Petition for Review.

Jurisdiction relinquished.

_____
**JAMES GARDNER COLINS, Senior Judge**