The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 29, 2026

**2026COA5**

**No. 24CA2203, *Keep Airport v. BOCC Boulder* — Jurisdiction of Courts — Standing; Real Property — Conservation Easements — Termination**

A division of the court of appeals considers, as a matter of first impression, whether adjacent property owners and other interested residents (the neighbors) have standing to challenge a board of county commissioners' decision to terminate a conservation easement that burdens private land. The division concludes that the neighbors lack standing to challenge the termination of the conservation easement because they do not have a legally protected interest recognized by common law or by the applicable land use code.

Court of Appeals No. 24CA2203
Boulder County District Court No. 23CV30652
Honorable Michael Kotlarczyk, Judge

Keep Airport Road Environmental & Safe; Eric Scherer; Gwen Scherer; Greg Petrosky; and Michelle Romeo,

Plaintiffs-Appellants,

v.

Boulder County Board of Commissioners,

Defendant-Appellee.

APPEAL DISMISSED AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

Announced January 29, 2026

Progressive Law LLC, Karen R. Breslin, Elizabeth, Colorado, for Plaintiffs-Appellants

Ben Pearlman, County Attorney, David Hughes, Deputy County Attorney, Erica Rogers, Assistant County Attorney, Boulder, Colorado, for Defendant-Appellee

¶ 1     In this action seeking judicial review of a decision by defendant, the Boulder County Board of County Commissioners (BOCC), to terminate a conservation easement, plaintiffs, Keep Airport Road Environmental & Safe, Eric Scherer, Gwen Scherer, Greg Petrosky, and Michelle Romeo (collectively, the neighbors), appeal the district court's order upholding the BOCC's decision. We dismiss the appeal for lack of standing and remand with directions.

## I.     Background

¶ 2     In 1982, the BOCC approved the Kanemoto Estates Subdivision (Kanemoto Estates). Kanemoto Estates consists of three parcels: two residential parcels and an agricultural parcel, "Outlot A." When the subdivision was created, the original owners of Kanemoto Estates executed an agreement granting Boulder County (the county) a conservation easement[1] encumbering Outlot A.

¶ 3     The purpose of the conservation easement was to "preserve[] open land for agricultural purposes." Under the terms of the

---

[1] A conservation easement is a restriction that runs with land for the purpose of maintaining the land in a predominantly natural, scenic, or open condition. *Kowalchik v. Brohl*, 2012 COA 25, ¶ 2.

1

conservation easement, the owners and their successors were prohibited from constructing any structures (including pavement) on Outlot A that were residential or "not necessary to an existing principal agricultural use," occupied over ten acres, or occupied over ten percent of the land. They were also required to manage Outlot A as a single agricultural unit. The easement was specified to run with the land and remain "until terminated or transferred" by the county. As now relevant, the easement permitted the county to terminate the easement if the Boulder County Planning Commission (Planning Commission) and the BOCC determined that a proposed development or land use was "consistent with the current Boulder County Comprehensive Plan and Boulder County Land Use Regulations."

¶ 4 After the easement was created, the BOCC executed a series of intergovernmental agreements with the City of Longmont (the city) to coordinate land annexation and property development activities within the city and the county. One such agreement created a mechanism for authorizing the development rights for a property to be transferred to a different property that the city and the county

deemed appropriate for additional development, consistent with the county's comprehensive plan.

¶ 5    In February 2023, Lefthand Ranch, LLC, the current owner of Kanemoto Estates, requested termination of the easement so that the area encompassing the subdivision could be annexed into the city for proposed development as a mixed residential housing community.  The Planning Commission requested public comment concerning termination of the easement and held a public hearing in March 2023.  The BOCC likewise requested public comment and held a public hearing in July 2023.

¶ 6    The neighbors — a coalition of individuals who own property adjacent to Outlot A and a community conservation entity they created — as well as other county residents submitted public comments and testified in opposition to termination of the easement.  A staff member of the county's Community Planning and Permitting Department prepared a memorandum for both hearings that included the public comments.  The memorandum recommended granting Lefthand Ranch's request to terminate the easement.

¶ 7     The Planning Commission unanimously voted to terminate the easement at the March 2023 hearing, concluding that termination of the easement was consistent with the Boulder County Land Use Code (BCLUC) and the county's comprehensive plan.  The BOCC likewise voted to terminate the easement at the conclusion of its July 2023 hearing.

¶ 8     The neighbors sought judicial review of the BOCC's decision under C.R.C.P. 106(a)(4).[2]  The BOCC filed a motion to dismiss the neighbors' complaint, contending that (1) the neighbors lacked standing because they hadn't suffered an injury in fact to a legally protected interest and (2) the BOCC's decision was an administrative decision not subject to review under Rule 106(a)(4).

¶ 9     The district court disagreed with both contentions.  In a written order denying the motion to dismiss, the court determined that the neighbors had satisfied both prongs of the standing inquiry because they (1) have a legally protected interest under common

---

[2] The neighbors also asserted claims for declaratory judgment, conflict of interest, and judicial review of agency action under the State Administrative Procedure Act, § 24-4-106, C.R.S. 2025.  The district court dismissed these claims, which aren't before us on appeal.

4

law to safeguard their properties against "neighboring zoning and other land use decisions" and (2) had alleged aesthetic and financial harm sufficient to establish injury in fact.[3] After considering the merits of the neighbors' complaint, the court determined that the county didn't abuse its discretion by terminating the easement and thus upheld the BOCC's decision.

## II. Standing

¶ 10   In its answer brief on appeal, the BOCC reasserts its argument that the neighbors don't have standing to challenge its decision. Specifically, the BOCC argues that the neighbors don't have a legally protected interest affected by the termination of the easement because they are neither parties to the agreement that created the easement nor owners of the land subject to the easement. The neighbors don't respond to this argument in their reply brief. *See People v. Bondsteel*, 2015 COA 165, ¶ 61 n.6 ("An

---

[3] The court also concluded that the neighbors had a legally protected interest under C.R.C.P. 106(a)(4) to challenge quasi-judicial decisions. But Rule 106(a)(4) doesn't confer a legally protected interest for purposes of establishing standing; rather, it sets forth procedures for seeking review of quasi-judicial decisions when standing otherwise exists. *Reeves v. City of Fort Collins*, 170 P.3d 850, 852 (Colo. App. 2007).

appellant's failure to respond in the reply brief to an argument made in the answer brief may be taken as a concession."), *aff'd*, 2019 CO 26, *overruled on other grounds by*, *Garcia v. People*, 2022 CO 6.  However, they argued in the district court that they have standing to bring their complaint because (1) under common law, they have a legally protected interest in safeguarding their properties from the adverse effects of zoning or other land use decisions; and (2) section 3-205(C)(5)(b) of the BCLUC affords "adjacent and/or nearby property owners" the right to advance notice when the BOCC seeks to vacate an easement.

¶ 11    As discussed in detail below, we agree with the BOCC that the neighbors lack standing to challenge its termination of the easement because the neighbors haven't demonstrated that they have a legally protected interest.

A.    Applicable Legal Principles and Standard of Review

¶ 12    Standing is a jurisdictional prerequisite that may be raised at any time, *Wibby v. Boulder Cnty. Bd. of Cnty. Comm'rs*, 2016 COA 104, ¶ 9, and a plaintiff must establish standing independently from a court's Rule 106(a)(4) jurisdiction, *Reeves v. City of Fort Collins*, 170 P.3d 850, 852 (Colo. App. 2007).  We can't consider the

merits of the neighbors' claims without first determining whether they have standing to bring those claims. *See Wibby*, ¶ 9.

¶ 13 In resolving a question of standing, we accept the plaintiffs' factual allegations as true, *Reeves*, 170 P.3d at 851, and may consider other documentary evidence in the appellate record to determine whether the plaintiffs have standing, *Rangeview, LLC v. City of Aurora*, 2016 COA 108, ¶ 11. The plaintiffs have standing if they have suffered (1) an "injury in fact" (2) to a "legally protected interest." *Id.* The first standing requirement "ensures that an actual controversy exists so that the matter is a proper one for judicial resolution," while the second "promotes judicial self-restraint." *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶¶ 9-10. "Claims for relief under the constitution, the common law, a statute, or a rule or regulation satisfy the legally-protected-interest requirement." *Id.* at ¶ 10.

¶ 14 We review de novo whether a party has standing. *Wibby*, ¶ 13.

## B. Analysis

### 1. The Neighbors Haven't Demonstrated That They Have a Legally Protected Interest Under Common Law

¶ 15 The neighbors argued below that Colorado law recognizes a legally protected interest *any* time a land use decision "could subject adjacent or nearby property owners to the risk of diminishment of their property values." In support of this argument, the neighbors referenced *Board of County Commissioners v. City of Thornton*, 629 P.2d 605 (Colo. 1981); *Rangeview*, 2016 COA 108; *Wells v. Lodge Properties, Inc.*, 976 P.2d 321 (Colo. App. 1998); and *Condiotti v. Board of County Commissioners*, 983 P.2d 184 (Colo. App. 1999).

¶ 16 In *Thornton* — a case challenging a county's rezoning of property — the supreme court held that "an owner of property adjacent to rezoned land has standing to challenge rezoning which adversely affects his property." 629 P.2d at 609. A division of this court reiterated that principle in *Rangeview* — another case challenging the proposed rezoning of property. *Rangeview*, ¶ 12 ("Colorado courts have recognized that owners of property adjacent

8

to rezoned land have standing to challenge rezoning that adversely affects them.").

¶ 17    The neighbors argued that *Wells* and *Condiotti* expanded this principle to apply to challenges to land use decisions other than zoning decisions.  In *Wells*, a division of this court applied the principle in a case involving a challenge to a building permit, holding that the plaintiff's "interest is sufficiently similar to a property owner's right to contest a detrimental rezoning on adjacent property as to confer standing on [the plaintiff]."  976 P.2d at 324. Similarly, in *Condiotti*, a division of this court recognized the principle in a matter involving a challenge to an amendment to a county's land use plan.  983 P.2d at 187.

¶ 18    Even assuming that Colorado case law supports the expansive interpretation espoused by the neighbors, we disagree with the neighbors that they have standing under the circumstances here, for two reasons.

¶ 19    First, we disagree with the neighbors' conclusory assertion that the BOCC's action of terminating the easement was a "land use decision."  A "[l]ocal land use decision" is an action of a governmental entity that has the effect of "granting, denying, or

9

granting with conditions an application for a development permit." § 13-51.5-102(3), C.R.S. 2025. The BOCC's termination of the easement alone didn't have the effect of authorizing development of the proposed mixed residential housing community. Rather, termination of the easement removed the restrictions prohibiting certain types of development on Outlot A, thereby allowing a developer to apply for a permit free of those restrictions. Put simply, the termination of the easement, at most, removed a barrier to a developer being able to successfully pursue a permit to construct the proposed mixed residential housing community.

¶ 20 Second, even accepting as true that the neighbors would suffer an injury in fact based on their asserted "financial and aesthetic" losses resulting from the easement's termination, they don't have a legally recognized interest that allows them to enforce the terms of the easement.

¶ 21 A conservation easement is a contractual obligation that provides its owner with the benefit of an interest in real property. *See* § 38-30.5-102, C.R.S. 2025 (defining "[c]onservation easement in gross"); Restatement (Third) of Prop.: Servitudes § 5.8 (A.L.I. 2000) (servitude burdens that exist in gross are simply contractual

obligations, the benefit of which is an interest in land). Unless a person is a third-party beneficiary of a contract, only the parties to a contract may seek to enforce its terms. *Bewley v. Semler*, 2018 CO 79, ¶¶ 16-17; *cf. Title Guar. Co. v. Harmer*, 430 P.2d 78, 80 (Colo. 1967) ("Strangers to the instrument creating an easement over real estate for a specific purpose cannot interfere with the right of the owner of the land to exercise full dominion over his property.").

¶ 22 A person is a third-party beneficiary of a contract and may sue to enforce its terms "if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *Bewley*, ¶ 17 (citation omitted). And in assessing the effect of a contract's terms, appellate courts consider the law existing at the time a contract was executed as a part of the document itself. *McShane v. Stirling Ranch Prop. Owners Ass'n*, 2017 CO 38, ¶ 17.

¶ 23 The neighbors acknowledge that the easement is a property interest that was created as a result of the county's agreement with the prior owners of the Kanemoto Estates to subdivide the property. But the neighbors aren't parties to the subdivision agreement, and

11

the plain language of the easement doesn't evidence an intent to directly benefit the neighbors or other members of the general public. *See id.* at ¶ 16 (a court first looks to the plain language of a deed to ascertain the parties' intent).

¶ 24     Additionally, under the applicable statutory language in effect when the easement was created — which predates the cases on which the neighbors rely — a conservation easement can be terminated by any lawful means, including by agreement of the parties. *See* § 38-30.5-107, C.R.S. 1982 (allowing conservation easements to be terminated in any manner "in which easements may be lawfully terminated") (originally enacted by Ch. 153, sec. 1, § 38-30.5-107, 1976 Colo. Sess. Laws 751); *see also* Restatement (Third) of Prop.: Servitudes § 7.1 (noting that an easement may be terminated by agreement of the parties). And under the currently applicable statute, only Lefthand Ranch or the county is entitled to initiate a proceeding to enforce the terms of the easement. *See* § 38-30.5-108(2), C.R.S. 2025 ("Actual or threatened injury to . . . a conservation easement in gross or the interest intended for protection by such easement may be prohibited or restrained . . . in

a proceeding initiated by the grantor or by an owner of the easement.").

¶ 25 While we aren't aware of a Colorado case addressing circumstances similar to those present in this case, we find authority from other states persuasive. *See LaFond v. Sweeney*, 2015 CO 3, ¶ 19 (considering the persuasive authority of decisions from other jurisdictions). Courts in other states have concluded that unless expressly authorized by the governing document's terms, third parties lack standing to enforce a conservation easement encumbering privately owned land.

¶ 26 For example, in *Schwartz v. Chester County Agricultural Land Preservation Board*, 180 A.3d 510, 511 (Pa. Commw. Ct. 2018), the court considered whether an appellant had standing to enforce the terms of a conservation easement entered into between private landowners and the county. The purpose of that easement was to "protect and conserve prime agricultural farmland by . . . limit[ing] development and use of agricultural land for nonagricultural purposes." *Id.*

¶ 27 The appellant, who wasn't a party to the easement agreement, alleged that the landowners were using the land in a manner that

violated the terms of the conservation easement.  *Id.* at 512.  Noting that the terms of the easement were "first and foremost the polestar of [the court's] inquiry," the court determined that the appellant lacked standing because the easement's terms didn't provide a mechanism for a third party "to enforce any violation, threatened or actual."  *Id.* at 514.

¶ 28    Likewise, in *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 46 A.3d 473, 477 (Md. Ct. Spec. App. 2012), *aff'd*, 68 A.3d 843 (Md. 2013), the court considered whether the appellants — neighboring property owners and a community organization opposed to a proposed development on a dairy farm — had standing to enforce the terms of a conservation easement agreement.  The easement agreement, which had been entered into by the owner of the dairy farm and a state agency, granted to the state an "agricultural preservation easement" that generally restricted the landowner from using the dairy farm for any commercial, industrial, or residential purpose.  *Id.* at 477-79.

¶ 29    The appellants argued that, as members of the public and persons who owned land adjacent to or near the dairy farm, they were third-party beneficiaries of the easement.  *Id.* at 483-84.  The

court disagreed, finding that, under the easement's plain language, the appellants were not third-party beneficiaries of the easement. *Id.* at 485-86.  Rather, the court concluded that, at best, the appellants were "incidental beneficiaries of the [e]asement [a]greement" and, as such, weren't entitled to enforce it.  *Id.* at 486. The court thus determined that the appellants lacked standing to enforce the terms of the easement.  *See id.* at 486-87.[4]

¶ 30    Here, the neighbors are neither parties to the agreement creating the easement nor third-party beneficiaries of the agreement.  Therefore, they have no authority to enforce the

---

[4] Conversely, at least one court has recognized third-party standing to enforce a conservation easement where such right of enforcement was expressly recognized by the terms of the deed and by state statute.  *See Tenn. Env't Council, Inc. v. Bright Par 3 Assocs., L.P.*, No. E2003-01982-COA-R3-CV, 2004 WL 419720, at *3 (Tenn. Ct. App. Mar. 8, 2004) (unpublished opinion) (any state resident could enforce the terms of a conservation easement where then-applicable state statute expressly provided that conservation easements are "held for the benefit of the people" (quoting Tenn. Code Ann. § 66-9-303 (2004)); *see also Est. of Robbins v. Chebeague & Cumberland Land Tr.*, 2017 ME 17, ¶ 23 (recognizing that state statutes may confer standing on individuals to advance the public interest); 765 Ill. Comp. Stat. 120/4(c) (2025) (authorizing "the owner of any real property abutting or within 500 feet of the real property subject to the conservation right" to enforce the conservation right).

easement agreement's terms, including the term addressing how the easement may be terminated.

¶ 31　Accordingly, because (1) the termination of the easement wasn't a "land use decision" and (2) the neighbors aren't entitled to enforce the easement's terms, we conclude that the neighbors haven't demonstrated that they have a legally protected interest arising out of common law that affords them standing.

2.　The Neighbors Haven't Demonstrated That They Have a Legally Protected Interest Under the BCLUC

¶ 32　The neighbors also argued below that they have a legally protected interest arising from the notice requirement contained in section 3-205(C)(5)(b) of the BCLUC.  That section says that "adjacent and/or nearby property owners" must be provided at least fourteen days' notice of public hearings concerning "vacations." The neighbors contend that this section affords them a right of participation similar to that recognized in *Reeves*, 170 P.3d at 854, such that they have a legally protected interest sufficient to confer standing.  Again, we disagree, for two reasons.

¶ 33　First, we aren't persuaded that section 3-205(C)(5)(b)'s notice requirement applies to the termination of conservation easements.

16

That section is contained in Article 3 of the BCLUC, which identifies the procedures associated with land use actions that require prior approval from the BOCC. *See* BCLUC §§ 3-100 to -300. Section 3-205(C)(5)(b) applies to requests to vacate certain land use actions, and only a property owner's request to vacate a *utility* easement requires fourteen days' advance notice to adjacent landowners. *See* BCLUC § 3-100(A)(17) (a property owner's request to vacate a "road, right-of-way, or utility easements" requires prior county approval); *see also* BCLUC § 10-100(A) (governing vacations of "[p]ublic roads, alleys, and easements . . . after consideration at a public hearing by both the Planning Commission and the [BOCC]"). Indeed, section 6-800 of the BCLUC, which governs conservation easements, doesn't contain a provision requiring notice to adjacent or nearby landowners if termination of a conservation easement is proposed. *See* BCLUC § 6-800(B)(2).

¶ 34    Second, *Reeves* is distinguishable. In *Reeves*, 170 P.3d at 852, a division of this court held that the plaintiff, who lived near a proposed redevelopment, had a legally protected interest sufficient to confer standing to challenge the redevelopment. The division's reasoning was based on specific language in Fort Collins's land use

17

and municipal codes that expressly afforded certain "parties in interest" the same rights as land use development applicants to challenge adverse decisions. *Id.* at 853. The division thus held that "by their plain terms, the [Fort Collins Land Use Code] and Municipal Code include a class of individuals who *otherwise may not have a legally protected interest under common law, as well as expand the class of individuals beyond those who have such a common law protected interest.*" *Id.* (emphasis added). The neighbors don't direct us to, nor have we found, similar language in the BCLUC supporting their contention.

¶ 35 For the foregoing reasons, we conclude that the neighbors haven't demonstrated that they have a legally protected interest sufficient to confer standing. Therefore, we need not address the parties' remaining arguments on appeal. *See Wibby*, ¶ 10.

### III. Disposition

¶ 36 The appeal is dismissed, and the case is remanded to the district court with directions to dismiss the neighbors' claim for judicial review under Rule 106(a)(4).

JUDGE J. JONES and JUDGE KUHN concur.